## THORALD O. HOBE *vs.* RÓDNEY B. SWIFT.

Argued June 5, 1894.   Reversed June 29, 1894.

No. 8729.

### Meaning of "folio," "ems," and "solid matter."

1878 G. S. ch. 70, § 31, construed, and the meaning of "folio," "ems," and "solid matter," as therein used, construed.

### Evidence, secondary, after notice to produce original.

Where a notice was duly served on the opposite party to produce at the trial the proof of publication in his possession, containing a printed notice, cut from the columns of the newspaper, and on the trial he refused to produce it, *held*, evidence of the number of ems in the notice, as measured in another copy of the paper, not produced in court, being material, was competent.

### Treble damages for improper foreclosure fees.

*Held*, under 1878 G. S. ch. 81, § 24, the mortgagor is entitled to recover by action of the holder of the mortgage, foreclosing the same, three times the amount of any costs and disbursements of the foreclosure charged as paid which have not in fact been paid, or have not been absolutely paid, without any reservation to the mortgagee of any "commission" or advantage whatever, either directly or indirectly, except payment of the particular debt.

### Burden of proof.

*Held*, further, in such an action, the burden of proof is on the plaintiff to show how much the amount charged is in excess of the amount paid by the defendant for such costs and disbursements, or else to show how much the amount charged exceeds what is reasonable or exceeds the amount allowed by law; whereupon the burden will be on the defendant to show how much was actually paid, and, if the amount so paid exceeds the amount allowed by law, that it was paid absolutely and in good faith.

### Costs of postponements of foreclosure sale.

*Held*, further, under section 8 of said chapter, the foreclosing mortgagee cannot charge the costs of a postponement, at his request, of the foreclosure sale, to the mortgagor; and, if he does so, he is liable in such action for treble the amount thereof.

### Defense of "good faith."

*Held*, in such an action, the good faith of the defendant is not a defense against the recovery of treble damages, unless the sums charged were absolutely paid on items which, if not excessive in amount, should, as between the mortgagor and the mortgagee, be deducted from the proceeds of the sale.

**Same.**

*Held,* further, even though such sums were so absolutely paid in good faith on such items in excess of the amount allowed by law, the plaintiff can recover such excess,. but not treble the amount thereof, in the same action, if the facts are sufficiently alleged.

Appeal by plaintiff, Thorald O. Hobe, from a judgment of the District Court of St. Louis County, *Charles L. Lewis,* J., entered December 16, 1893, against him for costs.

He owned lots four, five and six in block eleven in West Park Division of Duluth and on December 13, 1890, mortgaged them to Charles A. Britts to secure the payment of $1,200 and interest at eight per cent a year. Britts assigned the debt and mortgage April 27, 1891, to defendant, Rodney B. Swift and he on April 23, 1892, foreclosed by sale under a power in the mortgage and bid in the three lots for $1,436.40. On April 22, 1893, Hobe commenced this action against Swift to recover $241.20, three times the excess of costs and disbursements which he claimed were included in the foreclosure sale. The defendant answered that the debt and interest amounted to $1,330.66, the attorney fee provided by the mortgage $50, the printer's fees $45.75, sheriff's fees for three adjournments and sale $6, Register's fees $5, affidavit's $1. That these sums were all actually paid in good faith by him and that there was no excess. On the trial plaintiff offered competent evidence tending to prove the printer's fees were more than allowed by law, but it was objected to and rejected and he excepted. The court found for defendant, judgment was entered and plaintiff appeals.

*John Rustgard,* for appellant.

The $3 for three adjournments was not a proper charge against the mortgagor. 1878 G. S. ch. 81, § 8. The register of deeds was. entitled to ten cents per folio for recording the papers. There were but thirty eight folios. Here was an excess of $1.20. The notice of foreclosure being in evidence shows for itself that it contains but six folios. The printer was entitled to seventy five cents per folio for the first insertion and thirty five cents per folio for each of five subsequent insertions in the newspaper. This amounted to $15. 1878 G. S. ch. 70, § 31. Here was an excess of $30.75. Plaintiff was

entitled to recover three times the amount of these three items $104.85.   1878 G. S. ch. 81, § 24.

Defendant admits that he retained $107.75 and taxed it as costs. Plaintiff should be required to prove that the $50 was paid as attorney's fee.  If the sums so retained were actually paid as costs, let that be proved by defendant, who alleges it.  The evidence of such payment or nonpayment is, from the nature of the case, within the reach only of him.  Plaintiff may be morally certain that the moneys in question were never paid as alleged by defendant, but only some freak of fortune or some caprice of fate would enable him to produce admissible evidence of the fact if the law does not step in and presume the truth of the negative from the very fact that defendant refuses to produce evidence that the affirmative is true.

The statutory provisions relating to treble damages for trespass on and destruction of personal property read very much like 1878 G. S. ch. 81, § 24, but it will be observed that these sections are always followed by a clause giving defendant a right to show that the trespass was casual or involuntary for the purpose of reducing the damages to single only.  1878 G. S. ch. 76, §§ 47, 48; ch. 66, §§ 269, 270.

Notice was served on defendant to produce the notice of sale as printed and proof of publication.  He refused to produce these papers on the trial.  The plaintiff then attempted to give secondary evidence of their contents.  Objection was made and the court excluded the evidence.  Plaintiff excepted.  This was error.

*William B. Phelps,* for respondent.

Plaintiff endeavored to prove by the witness Seipel the number of "ems" in the published notice of foreclosure sale.  The witness had seen at a newspaper office a notice of foreclosure sale and had measured it.  He was asked to testify as to the number of "ems" it contained.  The notice was not shown to be the one under which the sale was made and this objection was sustained by the court. Plaintiff excepted.  The offer was again renewed with the same result.  Plaintiff assumed that the notice shown the witness was the one on which sale was made instead of attempting to prove it.  This ruling was not error.  The error, if any, was not prejudicial.

The burden of proving his case was on the plaintiff. To include costs and disbursements not absolutely paid is clearly a fraud upon the mortgagor of such a character as to subject the guilty party to a penalty of treble damages. But fraud is never presumed. It must be proved. *Berkey* v. *Judd,* 22 Minn. 287; *McMillan* v. *Edfast,* 50 Minn. 414; *Perine* v. *Grand Lodge A. O. U. W.,* 51 Minn. 224.

CANTY, J. The plaintiff, the mortgagor, brought this action against the defendant, the assignee of the mortgage, to recover, under the statute, three times the amount of the excess of costs and disbursements alleged to have been charged for making a statutory foreclosure, over and above the sum actually incurred and paid therefor.

The complaint alleges that $107.75 was so charged, and that such costs and disbursements did not exceed $28, and that the excess so charged has been retained by defendant.

The answer admits the execution of the mortgage, its record, assignment, and foreclosure, and that, at the time of its execution, plaintiff was the owner of the mortgaged premises. It alleges that the premises were sold for $1,436.40; that the amount of principal and interest then due was $1,330.66; and that the costs and disbursements necessarily and absolutely incurred and expended were $107.75, as follows: Attorney's fees, $50; printer's fees, for publishing notices, $45.75; sheriff's fee, for foreclosure sale, $6; register's fees, for recording certificate and affidavits, $5; notary's fee, four affidavits, $1.

On the trial before the court, without a jury, the record of the mortgage and all the foreclosure proceedings, except the affidavit of costs and disbursements, was introduced in evidence by plaintiff. He rested, and defendant put in no evidence. The court thereupon found for defendant, and from the judgment entered thereon plaintiff appeals.

1878 G. S. ch. 81, § 24, provides that "the mortgagor, his heirs or assigns, at any time within one year after foreclosure, may recover from the owner of the mortgage at the time of foreclosure three times the amount of any costs or disbursements not absolutely paid for said foreclosure."

The mortgage stipulates for an attorney's fee of $50 in case of foreclosure, which is not in excess of the maximum amount allowed by statute.

After the plaintiff had introduced the record of the mortgage and foreclosure proceedings in evidence, as aforesaid, he produced a notice, which had been duly served on defendant's attorney, demanding that he produce on the trial the original printer's affidavit of publication of the notice of foreclosure sale, which, by the record thereof already in evidence, appeared to contain a copy of such notice, cut from the printed columns of the newspaper in which it was published. The defendant refused to produce this affidavit; and then one Seipel was sworn as a witness, and testified on behalf of plaintiff that he had been in the printing business fourteen years, and was familiar with all kinds of work in that business; that he had measured this foreclosure notice the day before, in the newspaper office, as to the number of ems it contained. He was proceeding to testify to the identity of the printed notice, and an objection by defendant to his testifying to the contents of the notice was sustained. He was then asked how many ems this printed notice contained, and defendant objected to the evidence as incompetent, and was sustained. After some further evidence was introduced, identifying the notice measured, the witness was again recalled, and again asked how many ems of solid matter the notice contained, and objection was again sustained. These rulings are assigned by appellant as error.

1878 G. S. ch. 70, § 31, provides: "For publishing any notice, or any order, citation, summons, or any other proceeding or advertisement, required by law to be published in any newspaper, not more than seventy-five cents per folio for the first insertion, and thirty-five cents per folio for each insertion after the first; and for the purpose of computing the same, a folio is hereby declared to be equal to the space occupied by two hundred and fifty ems of solid matter of the kind of type used."

Though we cannot be supposed to know much about the technical terms of art in the printing business, yet this being a public statute, it is our duty to take judicial notice of the meaning of such terms used in it. A "folio," in that business, as in the law business, means 100 words; but in this statute the meaning of the term

"folio" is defined and limited, and must be used with reference to that definition. In this section it means 250 ems of solid matter. The em was originally square, and such square is the unit of measurement, and varies in size as the type varies. But still, different makes of type vary in width, and especially is there a difference in this respect between the old makes and the point system, which of late years is being almost universally adopted. While 250 ems will make on an average about 100 words in some makes of type, it will not in others. Solid matter means that there shall be no "leading" between the lines, and no "padding" beyond the usual and ordinary spacing between the words. With these restrictions the 250 ems must be taken as a folio, whether it makes 100 words or not. Then we cannot with any degree of accuracy, by counting the number of words in the copy of the printed notice here returned, determine the number of folios in it. But by doing so it certainly does not show that there has been no overcharge in this case. Sufficient foundation was laid for the introduction of the evidence of the witness Seipel as to the measurement of the printed notice, and it was error to reject the evidence.

It appears by the foreclosure proceedings that the sale was adjourned three times, for one week each time, and that the publication of the original notice was continued during these three weeks, and an additional notice inserted at the foot of it after each adjournment, and the publication of it also continued until the last one was inserted, which was the last publication before the sale. The sheriff's charge for each adjournment was one dollar. It sufficiently appeared by the evidence that all of these adjournments were made at the request of the defendant, and not of the plaintiff. 1878 G. S. ch. 81, § 8, provides that such postponements shall be at the expense of the party requesting them. All the expense of the same, including the cost of continuing the publication of the notice and the sheriff's fees for the adjournment, should be paid by the defendant. Each party contends that the burden of proof was on the other to show how much the defendant "absolutely paid" as costs and disbursements of the foreclosure. We are of the opinion that the burden was on the plaintiff to show how much the amount of such costs and disbursements exceeded what was reasonable, or exceeded the amount allowed by law. For this purpose he might

show, as he attempted to do, what the charge would be according to the maximum legal rate allowed by statute for publishing the notice of sale up to the time of the first postponement. When plaintiff has done this, the burden of proof is thrown on defendant to show that he paid more; and, if the amount so paid exceeds the amount allowed by law, that, as provided by 1878, G. S. ch. 81, § 24, it was "absolutely paid," without any reservation, agreement, or understanding, express or implied, that the payer shall have any "rake off," "commission," or advantage whatever from it, except as payment of that particular debt.

Any such overpayment, not thus absolutely paid, is no defense, whether it merely exceeds what is reasonable or exceeds the amount allowed by law; but the plaintiff is entitled to recover three times the amount of any part thereof not thus absolutely paid. The plaintiff will also be entitled to recover three times the amount of any item or excess thereof which has been charged, but not paid at all.

We are also of the opinion that the plaintiff is entitled to recover three times the amount of the expense of the adjournments charged to him by the defendant, whether absolutely paid or not. This expense was not for plaintiff to pay, and, as to him, it is immaterial whether it was paid or not. It must be an absolute payment of costs, which, if not excessive, are his to pay. Using his money to pay defendant's own private debt is not such a payment as is contemplated by the statute. The fact that defendant may have charged this to plaintiff in good faith, and not corruptly, is no defense against the recovery of treble damages. Under this statute, good faith is not a defense. In this respect it differs from 1878 G. S. ch. 75, §§ 47, 48, and ch. 66, §§ 269, 270, providing for treble damages in case of willful trespass. It is true that the courts are inclined to spell the defense of good faith into a penal statue, where it is consistent with the policy of the legislature; but it is our opinion it is not in this case consistent with legislative policy.

The legislature intended to prevent the foreclosing mortgagee from using the pretense of good faith as a guise to cover extortion, and also to compel greater care on his part to see that he did not appropriate what did not belong to him. This question is well discussed in *Cobbey* v. *Burks,* 11 Neb. 157, (8 N. W. 386,) where it

is said: "On any other principle a conviction would seldom take place, even in cases of the most flagrant abuse; for pretexts would never be wanting."

The plaintiff will also be entitled to recover in the same action the amount, but not three times the amount, of the excess of any payment over and above what is allowed by law, even though paid absolutely and in good faith. The same allegations in the pleading may be sufficient to recover either treble or single damages. It may not be known from the complaint which class of damages is claimed, except as it appears from the prayer for judgment. The fact that plaintiff claims treble damages under the statute will not prevent him from recovering single damages, as in an ordinary action. *Bagley* v. *Sternberg*, 34 Minn. 470, (26 N. W. 602.) The technical distinctions as to forms of action are abolished.

The judgment appealed from should be reversed. So ordered.

COLLINS and BUCK, JJ., did not sit.

(Opinion published 59 N. W. 831.)