THOMAS S. JOYCE v. GREAT NORTHERN RAILWAY COMPANY.[1]

March 1, 1907.

Nos. 14,996, 14,911—(59, 60).

**Act Constitutional.**

R. L. 1905, § 5097, declaring it unlawful for two or more employers of labor to combine or confer together for the purpose of preventing any person from procuring employment, construed, and *held* a valid legislative enactment.

**Preventing Employment of Third Person.**

If one employer by conference with another employer prevents, without excuse or justification, a third person from procuring employment with such other employer, he is liable for damages under the statute to the person so interfered with.

**Malicious Motive.**

A malicious motive or purpose is essential to give rise to a cause of action under the statute; not actual malice, but such as the law implies from the fact that the act complained of was unlawful and without justification.

**Evidence.**

Plaintiff had been in the employ of the Union Depot Company as a track repairer. He was injured while engaged in the discharge of his duties by being struck by a switch engine of defendant, then being operated in the depot company's yards. On recovering from his injury, he sought re-employment of the depot company. Defendant interfered, and by its act induced the depot company to refuse him further employment, except upon the condition that he release defendant from all claim for damages on account of his injury. He declined to release his claim, and the depot company, in consequence of the interference of defendant and plaintiff's refusal to release, refused to re-employ him. *Held*, that the act of defendant, on the evidence disclosed, was a violation of the statute, and constituted, unexplained by matters in justification, an actionable tort, and the question should have been submitted to the jury under the second cause of action.

**Same.**

Evidence presented in the record in support of plaintiff's first cause of action examined, and *held* insufficient to sustain the verdict of the jury

[1]Reported in 110 N. W. 975.

100 M.—15

to the effect that plaintiff's injury was caused by the negligence of defendant's servants in operating the engine which struck him at an excessive rate of speed.

Action in the district court for Ramsey county to recover $5,000 for personal injuries and $5,000 for wrongfully preventing plaintiff from obtaining employment with the Union Depot Company. The case was tried before Hallam, J., and a jury, which rendered a verdict in favor of the plaintiff on the first cause of action for $906. At the conclusion of plaintiff's testimony, the second cause of action was dismissed. Plaintiff appealed from an order denying a motion for a new trial, and the defendant from an order denying a motion for judgment notwithstanding the verdict and granting a new trial unless plaintiff should consent to a reduction of the verdict to $600. Reversed upon both appeals and a new trial granted.

*J. P. Kyle,* for plaintiff.

*M. L. Countryman,* for defendant.

BROWN, J.

Plaintiff seeks to recover damages upon two separate causes of action, viz.: (1) For injuries to his person caused by the alleged negligence of defendant and its servants; and (2) for the wrongful and unlawful conduct of defendant in preventing him from obtaining employment from the Union Depot Company. The court, at the conclusion of plaintiff's case, dismissed the second cause of action on the ground that the evidence was insufficient to justify a recovery by plaintiff; but a verdict was returned in his favor on the first cause of action for $906. Defendant appealed from an order denying its motion for judgment notwithstanding the verdict, or for a new trial; and plaintiff appealed from an order denying a new trial as to the second cause of action.

1. The facts in reference to plaintiff's second cause of action are as follows: Defendant Great Northern Railway Company and the Union Depot Company are separate corporations, organized and existing under the laws of this state. The depot company owns and operates the Union Station in the city of St. Paul, including the station buildings, a train shed, and numerous railroad tracks leading to the same, over which the several railroad companies making use of

the station, including the Great Northern Company, operate their trains in and out of the depot. The railway companies are tenants of the depot company, paying rentals for the use of its tracks and station, though the Great Northern Company has the exclusive use of three tracks leading thereto. The several roads own and operate their own switch engines in the depot yards in the movement of their trains and cars.

At the time of the accident resulting in the injury of plaintiff, he was, and for some time prior thereto had been, in the employ of the depot company as a track repairer; his duty being to assist in the repair of the yard tracks, and other work which might from time to time be assigned him. The injury received by him necessitated a severance of those relations, and for all practical purposes of the case he has never since been in its employ. On recovering from his injury, he applied to the depot company for re-employment, was promised a position by the yard foreman of the company, and told to report for work the following Monday, subject to the approval of the superintendent. At about this time the claim agent of the Great Northern Company, after investigating the injury received by plaintiff and the cause thereof, it having been occasioned by one of the switch engines of that company, wrote and caused to be delivered to the superintendent of the depot company the following letter:

THE GREAT NORTHERN RAILWAY LINE.

Great Northern Railway.

Montana Central Railway.

Duluth, Watertown & Pacific Railway.

Willmar & Sioux Falls Railway.   Claim Department.

St. Paul, Minn., July 18th, 1905.

W. G. Bissell, Claim Agent.
Mr. Jos. Strawhorn,
         Supt. St. P. Union Depot, City.

Dear Sir:—

Referring to accident to laborer T. S. Joyce in St. Paul yards the 13th, beg to advise that I have made an investigation of this

accident and fail to see that any one was to blame for same, unless it was injured man.

It appears that Joyce, when first seen, was about 100 feet from engine on engineer's side; that he apparently saw engine and stepped to other side of track out of view of engineer. Engineer was ringing bell, and fireman was shoveling coal, and neither knew that the man had been struck.

Under the circumstances, the only thing that I can do in this case is to pay bills for medical and surgical attention and take release from him for same. I enclose release herewith, and would ask, before this man is allowed to resume work, that same be executed, securing two witnesses to it, and returning same to me for my file.    Yours truly,

.W. G. Bissell,
Claim Agent.

Plaintiff reported for work in accordance with the suggestion of the yard foreman, and was referred to the superintendent, by whom he was informed that he would not be re-employed unless he released the Great Northern Company from all claim for damages on account of the injury heretofore referred to.   He refused to release the railway company, and the depot company declined to re-employ him.

The superintendent of that company, who had authority to employ and discharge men, testified on the trial that he refused plaintiff re-employment because of and in consequence of the suggestion from the claim agent of the railway company, and plaintiff's refusal to comply therewith.  He did not demand that plaintiff sign any particular form of writing, either releasing the railway company upon payment of the medical and surgical bills referred to in the letter, or otherwise.  He refused plaintiff employment simply because he would not release that company, and this by reason of the interference of the claim agent.

The complaint alleges in this connection that the railway company is a rich, powerful, and influential corporation; that it has for many years used the railroad tracks and terminals of the depot company, paying a large rental therefor; that in consequence of the relations existing between the two companies the railway company has

been able to, and does, influence and control the depot company in the operation and management of its affairs; and that it used such power and influence on the occasion in question wrongfully and unlawfully to prevent the plaintiff from obtaining employment with that company.

The trial court dismissed this cause of action on the theory that the railway company had sufficient interest in the men employed by the depot company in and about the yards to justify it in making a request of the kind contained in the letter of the claim agent, and was justified in taking such interest and seeing that persons antagonistic to or having litigation with it should not be employed by the depot company in a capacity where their services involved duties toward the railway company.

2. That the wrongful and malicious interference by a stranger with contract relations existing between others, by causing one to commit a breach thereof, amounts to an actionable tort, is affirmed by nearly all the courts of the present day. The old rule that the remedy in such cases was an action against the party to the contract who committed the breach, and not against the wrongful intermeddler, is not now the law, either in this country or in England. That rule has been extended and enlarged, and an action ex delicto against the mischievous wrongdoer is now sustained by nearly all the courts (Quinn v. Leathem, App. Cas. [1901] 495; Lumley v. Gye, 2 El. & Bl. 216; Walker v. Cronin, 107 Mass. 555; London v. Horn, 206 Ill. 493, 69 N. E. 526, 99 Am. St. 185; Perkins v. Pendleton, 90 Me. 166, 38 Atl. 96, 60 Am. St. 252; Berry v. Donovan, 188 Mass. 353, 74 N. E. 603, 108 Am. St. 499), though the old rule is still the law of some of the states (Chambers v. Baldwin, 91 Ky. 121, 15 S. W. 57, 11 L. R. A. 545, 34 Am. St. 165; Glencoe v. Hudson, 138 Mo. 439, 40 S. W. 93, 36 L. R. A. 804, 60 Am. St. 560).

Some eminent judges and courts have insisted with persuasive argument that such wrongful interference for the purpose of preventing the formation of contracts is equally actionable. May v. Wood, 172 Mass. 14, 51 N. E. 191; Graham v. St. Charles, 47 La. Ann. 214, 16 South. 806, 27 L. R. A. 416, 49 Am. St. 366; Giblan v. National, 72 L. J. K. B. Div. 907; Temperton v. Russell, 1 Q. B. Div. [1893] 715; 16 Am. & Eng. Enc. (2d Ed.) 1114, and cases

cited. The precise question has never come before this court, though we had an analogous case before us in Gray v. Building Trades Council, 91 Minn. 171, 97 N. W. 663, 63 L. R. A. 753, 103 Am. St. 477. We there held, as respects a boycott, that it was immaterial whether contract relations actually existed between the person boycotted and his customers; that it was equally unlawful to prevent him from obtaining customers with whom he could contract, as to interrupt existing relations, and such is the law in other states. Vegelahn v. Guntner, 167 Mass. 94, 44 N. E. 1077, 35 L. R. A. 722, 57 Am. St. 443; Jersey City v. Cassidy, 63 N. J. Eq. 759, 53 Atl. 230.

But it is unnecessary to pursue this feature of the case further, or to inquire whether the common law does or does not afford a remedy against an intermeddler in cases where he does not interfere with existing contract relations, but only prevents their formation. The question is removed from doubt or conjecture by section 5097, R. L. 1905. This statute was not referred to in the court below, nor cited on the original argument in this court. Attention was called to it by a member of the court in consultation, and, rather than decide the case without opportunity of counsel to be heard upon the question whether it applied to the facts at bar, we called for additional briefs. We could not, knowing of its existence, well ignore the statute.

3. Though the complaint was not framed in view of the statute, its allegations are broad enough to bring the case within its operation. The statute, as found in the Revised Laws of 1905, was taken from chapter 174, p. 391, Laws 1895, and, while the phraseology of the original enactment is somewhat changed in the revision, it is to all intents and purposes practically the same. The portion here material provides as follows:

> It shall be unlawful for any two or more employers or any two or more corporations, to combine or to agree to combine or confer together for the purpose of interfering with, or preventing any person or persons from procuring employment, either by threats, promises, or by circulating or causing to be circulated blacklists, or for the purpose of procuring and causing the discharge of any employee or employees by any means whatsoever.

It is contended by defendant that the sole object and purpose of this statute was to prevent conspiracy on the part of employers designed to coerce their employees. We do not so construe the statute. The title to the act, it is true, tends to show that the statute was intended originally to be limited to preventing the practice on the part of employers of blacklisting, coercing, or unduly influencing their employees; but the title is not the sole guide in construing the enactment thereunder. That portion of the statute here under consideration is pertinent to the subject-matter expressed in the title, and goes far beyond the restrictive view given by defendant's counsel.

The violent strife in recent years between employers and employees respecting the rights and obligations of each to the other has brought from the legislatures of many of the states numerous enactments for the purpose of ameliorating the condition of the employee on the one hand and protecting the property and property rights of the employer on the other. These the courts have sustained on the broad ground that every citizen is entitled to the equal protection of the law, and that it is a legitimate exercise of legislative power to prescribe rules defining and establishing distinctions respecting the rights, obligations, and duties of employers and employees as a class. Public attention has repeatedly been called to the alleged wrongful and malicious conduct of employers in interfering with the free exercise of the will of employees in pursuing their calling, particularly in efforts to prevent them from obtaining employment where they may, of which blacklist cases furnish an illustration. On the other hand, the Reports are full of decisions respecting the wrongful and unlawful acts of employees, through labor unions, in coercing and influencing the action of employers by boycotts and other equally wrongful and unlawful means.

The statute under consideration is in line with other similar legislation designed to in a measure remedy existing evils, and was undoubtedly intended as a further check on employers, and to declare their acts, in so far as taken for the purpose of preventing laborers from obtaining employment, unlawful. It provides that it shall be unlawful for any two or more employers to combine, or agree to combine, or confer together, for the purpose of interfering or prevent-

ing any person from obtaining employment, either by threats, promises, or by circulating, or causing to be circulated, a blacklist.

The facts in this case show a conferring together by the two corporations for the purpose of preventing plaintiff from procuring employment with the depot company. The letter of the claim agent to that company may be construed as a request on the part of the railway company that plaintiff be not re-employed, except on condition that he release his claim for damages against it; and he was denied employment because he refused to comply with the condition. Though the agents of the two companies did not meet and confer together personally, or agree to combine, it is a fair question for the jury to determine, on the facts disclosed, whether there was not a conference within the meaning of the statute.

The validity of this statute was sustained in State v. Justus, 85 Minn. 279, 88 N. W. 759, 56 L. R. A. 757, 89 Am. St. 550. Although this particular part of the statute was not there before the court, the decision made applies, and sustains the view that it is not unconstitutional. It applies to employers as a class, operates equally upon all, and is not, therefore, obnoxious to constitutional principles. Its basic principle is found in the declaration of our fundamental law that there shall be a certain remedy for all wrongs, and the further general rule that every wrongful act of a person which causes temporal loss or damage to another is an actionable tort. Graham v. St. Charles, 47 La. An. 214, 16 South. 806, 27 L. R. A. 416, 49 Am. St. 366.

4. The statute is not, however, to be given a literal application; that is, it should not be so construed or applied that a rightful interference in preventing a person from obtaining employment with a particular employer would constitute a violation of its provisions. Conditions might exist between two employers that an interference to prevent the employment of a particular person would be perfectly justifiable. To constitute an actionable wrong under the statute, therefore, it should appear that the interfering employer was actuated by malice or an evil intent toward the person interfered with. Statutes of this character, declaring a particular act wrongful and unlawful, which do not expressly make malice or evil intent an essential ingredient, are enlarged by construction, and an element of malice incorporated therein by the courts in furtherance of natural right and justice.

Or, as expressed in the case of Hobe v. Swift, 58 Minn. 84, 59 N. W. 831, the courts "spell the defense of good faith into a penal statute." Price v. Denison, 95 Minn. 106, 103 N. W. 728.

A person may take such action in furtherance of his own interests, in the preservation and protection of his property rights, as circumstances may require, and so long as he does not act maliciously toward, or unreasonably or unnecessarily interfere with the rights of his neighbor, he cannot be charged with actionable wrong, whatever may be the result of his conduct in pursuing his own welfare. Malice is therefore essential to the right of action under the statute; not express malice, but such as the law implies in such cases from the fact that the act complained of was unlawful. Malice, under the common acceptation of the term, means ill will against a person; but in its legal sense, as applied to statutes like this, it means an unlawful act, done intentionally without just cause or excuse. 16 Am. & Eng. Enc. (2d Ed.) 1112. The unlawfulness of the act gives rise to a presumption of legal malice, which is sufficient to support an action for the wrong.

And in the case at bar it must be held that defendant is not liable under the second cause of action, if under the circumstances disclosed it was justified in the conduct complained of. The trial court, as already noted, held that defendant had such an interest in the conduct of the affairs of the depot company as to justify it legally in requesting that company to refuse plaintiff re-employment, unless he would release his right to damages for the injury referred to. It may be conceded that the railway company is vitally interested in the management of the depot and depot yards, and that it may properly interfere and insist that no incompetent or unworthy persons be employed therein; and, if such was the foundation of its conduct here in question, no liability exists. But we are unable to concur in the view that, upon the facts now before the court, its conduct was justified as a matter of law.

To justify an act of interference of this sort, it must be founded upon some lawful object. Walker v. Cronin, 107 Mass. 555. This does not appear. There is no suggestion in the record that plaintiff was incompetent for the duties assigned him, nor that his employment would be detrimental to the railway company in the operation of its trains in the depot yards. The only reason, so far as the evidence discloses,

for the interference of the company in preventing his employment, was to induce or coerce him into releasing his right to damages. He had made no claim for damages at this time. The company assumed, probably rightfully, that one would be made, and it sought in this manner to relieve itself therefrom. This, standing alone, was a wrongful object within the contemplation of law, and insufficient as a justification.

But it is further contended that plaintiff's injuries were the result of his own negligence, that his claim against the railway company was without merit, and its assertion justified the company in objecting to his further retention by the depot company. In considering this feature of the justification, too much stress should not be laid upon the fact that plaintiff had at the time of the interference complained of made no claim for damages. It may fairly be said that the company was justified in assuming that a claim would be made, and plaintiff's refusal to release it shows that he intended to demand redress for his injury. If defendant's position in this respect be sustained by a fair view of the evidence, a question for the jury, and it be found that plaintiff's claim for damages was wholly without merit, or if the circumstances surrounding the accident be such as to justify the belief on the part of the company that it was without merit, and was about to be wrongfully asserted against it, such facts would fully justify it in interfering to prevent plaintiff's further retention as an employee of the depot company. Its relations with that company are of such a nature as to justify it in opposing the employment of persons who, when injured by their own fault, assert meritless claims for damages and involve the company in litigation.

5. It follows that the second cause of action should not have been dismissed. It should have been tried out and sent to the jury, if the evidence presented a right of recovery within the statute and principles of law referred to. The letter from the claim agent to the depot company, operating as it did to cause the latter to refuse plaintiff re-employment, if within the scope of his authority, was, unexplained by matters in justification, prima facie a violation of the statute and sufficient to justify a recovery. The extent of the authority of the claim agent was not made a question on the trial below, nor was it ruled upon by the trial court. The meager evidence presented in this record will not justify us in holding that he exceeded his authority.

6. The facts with reference to the first cause of action, on which plaintiff recovered a verdict, are substantially as follows:

As already stated, plaintiff was in the employ of the depot company as a track repairer. While in the discharge of his duties he was struck by a switch engine operated by defendant and seriously injured. The acts of alleged negligence on which he relies for recovery, are (1) that the servants of defendant in charge of the switch engine negligently failed and omitted to ring the bell as it approached plaintiff, or give other warning of its approach; and (2) that the said servants negligently and carelessly operated the engine at an excessive rate of speed —it being contended that both these acts were in violation of custom theretofore established and followed in the yards in the operation of switch engines, upon which plaintiff had the right to rely. The court submitted the case to the jury on both these theories, saying to them that if they found the alleged custom to exist, and that it was violated either by failing to ring the bell or by operating the engine at an excessive rate of speed, plaintiff might recover.

The evidence is sufficient to take the question of custom and the failure to ring the bell to the jury, but we think it insufficient to justify recovery by plaintiff on the theory of negligence in operating the engine at an excessive rate of speed. Plaintiff testified that he was engaged in repairing one of the tracks used exclusively by defendant, and that while so engaged he was struck by the engine and injured; that he did not observe the engine approaching him, and did not know of the fact that it was approaching until it struck him. In view of this fact, it is obvious that he did not rely on this occasion upon an observance of the custom of operating engines in the yards at a certain rate of speed, eight miles an hour, and the excessive speed, therefore, had no causal connection with the accident. If plaintiff had seen the engine approaching, he would have been entitled to rely upon the custom as to speed and to regulate his movements accordingly. The evidence here before us is insufficient to warrant the submission of this feature of the case to the jury. The questions of contributory negligence and assumption of risk were for the jury.

Order reversed upon both appeals, and new trial granted.