GLENCOE LAND AND GRAVEL COMPANY, *Appellant*, v.
HUDSON BROTHERS COMMISSION COMPANY *et al.*

### Division One, April 3, 1897.

1. **Real Estate:** SAND. Sand or gravel, while in its original bed, is real estate.

2. ———: ———: CONVERSION: ACTION. Trover, or an equivalent action under the code, lies only for the conversion of personal property, and will not lie for conversion of sand or gravel in its original bed.

3. **Pleading:** ACTION: DEMURRER: CONTRACT: DAMAGES: MASTER AND SERVANT: CARRIER. An action can not be maintained for inducing a third party to break his contract with plaintiff, where the relation of master and servant does not exist between the parties to the contract; and to hold that a railroad company is the servant of the shipper, would revolutionize the whole law relating to the duties, obligations, and liabilities of common carriers.

4. **Breach of Contract:** REMEDY. Where plaintiff complains that a railroad company was induced to break its contract with plaintiff by the threats and representations of a commission company, its remedy is an action against the railroad company for breach of contract.

*Appeal from St. Louis City Circuit Court.*

AFFIRMED.

*R. M. Nichols* for appellant.

(1) Any intermeddling with, or dominion over, the property of another, which is subversive of the dominion of the true owner and in denial of his rights, or any assumption of the right to control or dispose of the property, constitutes a conversion. *Allen v. McMonagle*, 77 Mo. 478; *Bolling v. Kirby*, 90 Ala. 215; *Johnson v. Farr*, 60 N. H. 426; *Baker v. Beers*, 64 N. H. 102; *Frome v. Dennis*, 45 N. J. L. 515; *Olds v. Chicago*, 33 Ill. App. 443. (2) If a third person without lawful

justification induces a party who for a consideration has contracted to render personal services to another, to quit such services and refuse to perform his part of the agreement, such person is liable to the party injured in damages. *Haskins v. Royster*, 70 N. Car. 605; *Walker v. Cronin*, 107 Mass. 555; *Bixby v. Dunlap*, 35 N. H. 460; *Jones v. Blocker*, 43 Ga. 331; *Noice v. Brown*, 39 N. J. L. 569.

*John W. Noble, George H. Shields, William G. Pettus*, and *John R. Warfield* for respondents.

(1) There can be no trover, or action equivalent to it, under the code, save as to goods and personal property. Cooley on Torts [2 Ed.], pp. 442, 448; 26 Am. and Eng. Ency. of Law, pp. 714, 765, 774. Deprivation of the possession is the gist of the action. 26 Am. and Eng. Ency. of Law, p. 712. (2) If the petition is based on the theory of an interference with an alleged contract with a third person, the railroad company, it is fatally defective in not averring knowledge on part of defendants of said contract. Hale on Torts [1896 Ed.], sec. 186, p. 362; 2 Harvard Law Rev. 19; 7 Harvard Law Rev. 428; *McCann v. Wolff*, 28 Mo. App. 447. The cases as a rule are against allowing a cause of action for such interference under any circumstances, in this country. *Chambers v. Baldwin*, 91 Ky. 121; *Boulier v. Macauley*, 91 Ky. 135; *Boyson v. Thorn*, 98 Cal. 578; *Haskins v. Royster*, 70 N. Car. 601; Cooley on Torts [2 Ed.], p. 581; *Kimball v. Harman*, 34 Md. 407; 5 Am. and Eng. Ency. of Law, p. 331, sec. 5; *Vicars v. Wilcocks*, 8 East. 1. (3) The petition is defective in not averring: *First*. That claim of defendants was false and made with malice and knowledge of its falsity. 13 Am. and Eng. Ency. of Law, p. 366,

sec. 9, note 2; Cooley on Torts [2 Ed.], p. 260; Pollock on Torts [Walds. Am. Ed.], p. 388; Bishop on Non-Contract Law, secs. 344–348; Clerk and Lindsell on Torts, ch. 18, p. 492; *Gerard v. Dickinson*, 4 Rep. 18a; *Wren v. Wield*, L. R., 4 Q. B. 730; Hale on Torts, sec. 165. *Second.* That it does not aver special damage with sufficient particularity. Hale on Torts, sec. 165; Clerk and Lindsell on Torts, sec. 497; *Malachy v. Soper*, 3 Bing. N. C. 371. (4) There is no wrong done by one asserting a claim which he honestly believes himself to possess. Hale on Torts, sec. 165; 13 Am. and Eng. Ency. of Law, p. 368, secs. *a* and *d.* It is not actionable for any man to assert his own rights at any time in good faith. *Smith v. Spooner*, 3 Taunt. 246; *Carr v. Duckctt*, 5 N. & H. 783; Cooley on Torts [2 Ed.], p. 260; Bishop on Non-Contract Law, secs. 345, 351. He may and should give proper warning of his claim of right. *Gerard v. Dickinson*, 4 Co. 18a; *Penniman's case*, Sir F. Moore, 410.

MACFARLANE, J.—This was an action for damages instituted in the circuit court of the city of St. Louis on November 7, 1893, upon a petition as follows:

"For cause of action plaintiff avers that the plaintiff is a corporation duly organized and doing business under the laws of the State of Illinois; that the defendants, the Hudson Brothers Commission Company, is a corporation duly organized under the laws of the State of Missouri, and that its codefendants are its chief and only stockholders and directors; that plaintiff is seized of, and at the present time and at the times hereinafter stated, was in possession of a piece of land located in St. Louis county, Missouri, aggregating 213 acres, more or less," which is particularly described.

"Plaintiff further avers that at the present time and at the times hereinafter stated there was located

upon said above described property, large and valuable deposits of sand and gravel and other materials; that long prior to the dates hereinafter stated plaintiff operated said sand beds and gravel pits by excavating and selling therefrom large quantities of gravel and sand; that prior to the dates hereinafter referred to plaintiff had established a very valuable and lucrative business in the sale of the valuable deposits of sand and gravel upon its said premises as aforesaid.

"Plaintiff further avers that said above described real estate and said sandbars and gravel pits as aforesaid are located adjacent to the Missouri Pacific railroad; that said Missouri Pacific Railroad Company is a common carrier of freight throughout the State of Missouri, and as such was at the times hereinafter referred to serving this plaintiff as such carrier in the transportation of plaintiff's sand and gravel from said sandbars and gravel pits, as aforesaid, to various markets; that there is no other common carrier or railroad, or means of hauling said gravel and sand from said premises saving and excepting said Missouri Pacific railroad; that said 'sand and gravel pits are connected with said Missouri Pacific Railroad Company by means of a switch built across and over the above described real estate, and at the times hereinafter referred to, at the request and under contract with this plaintiff, the said Missouri Pacific Railroad Company was using said switch in hauling said plaintiff's sand and gravel from said pits aforesaid to the various markets at which it had vended and had contracted to sell said sand.

"Plaintiff further avers that prior to the first day of June, 1893, it entered into a contract with the Missouri Pacific Railroad Company whereby it, the said Missouri Pacific Railroad Company, agreed to transport large quantities of sand and gravel, to wit: twenty-five carloads per day, or more if so desired,·

over its said roadbed to any and all points as might be directed by plaintiff; that on or about, to wit, June 1, 1895, the said defendants notified the said Missouri Pacific Railroad Company, that they claimed said premises and sandbars and gravel pits located thereon, and that it, the said Missouri Pacific Railroad Company, should no longer serve the plaintiff in removing to market or moving from the premises over its said roadbed and over the switch built upon said premises from said sandbars and gravel pits to the main line of said Missouri Pacific Railroad Company, the said gravel and sand from said sandbars and gravel pits or the cars which said plaintiff loaded with gravel and sand from said sandbars and gravel pits; that said defendants claimed the same as aforesaid and would hold said Missouri Pacific Railroad Company liable as trespassers if they entered upon said premises or carried therefrom the said sand and gravel at the request of this plaintiff.

"Plaintiff further avers that at that time it had entered into divers and sundry contracts with parties for the sale and delivery of great quantities of sand and gravel aggregating many hundreds of carloads; that by reason of said notice given to said railroad company by the said defendants as aforesaid, the said railroad company refused to haul any gravel or sand from said premises; that in consequence of said refusal of said railroad company plaintiff was wholly unable to sell said sand and gravel—that without a market for the said sand and gravel through said common carrier, as aforesaid, the same was wholly useless and worthless; that by reason of said notice and interference with plaintiff's business, as aforesaid, the same has been wholly lost and broken up and rendered worthless to plaintiff and that plaintiff has sustained a damage by reason of said unwarranted trespass and

interference against its rights by defendants in the sum of twenty-five thousand dollars.

"Wherefore and by reason of the premises plaintiff prays judgment against defendants for the sum of twenty-five thousand dollars together with interest and costs of this suit."

To which petition the defendants interposed a demurrer assigning as a ground that the petition did not state facts sufficient to constitute a cause of action. The demurrer was sustained on March 20, 1895, and the cause is before this court by appeal from the judgment upon such demurrer.

1. Plaintiff insists that the petition states a cause of action which authorizes a recovery as for the conversion of the gravel and sand. That contention can not be sustained, for the reason that an action of trover, or an equivalent action under the code, only lies for the conversion of personal property. The charge of the petition is that on the land were "large and valuable deposits of sand and gravel," which, on account of the interference of defendant, plaintiff was unable to market. Sand and gravel, while in its original bed, is as much a part of the realty as the earth itself. After it has been mined or separated from the land it may become the subject of conversion, not before. The petition makes no charge of the conversion of sand or gravel after its separation from the land. 26 Am. and Eng. Ency. of Law, 774, par. 5, and cases cited.

2. It is insisted in the next place, that defendant is answerable in damages to plaintiff for the injurious consequences of inducing the railway company to violate its contract to carry to market the gravel and sand taken from the land. This is really the ground relied upon for recovery.

When plaintiff and the carrier entered into the

contract each looked to the other for its faithful per-
formance, and to no one else.  We can see nothing
more in this case, as stated, than a simple voluntary
breach of contract by the railroad company.  We are
unable to see, in principle, that there is a difference
between a breach induced by the advice, persuasion or
even threats, of a third party, and one caused by cir-
cumstances connected with the business or service the
party contracted to do.  In either case the breach of
contract would be voluntary.  There is no charge in
the petition that the railroad company was caused to
refuse to carry out its contract, or was rendered unable
to do so, contrary to its will, by the fraud, deceit or
coercion of defendant.  The direct and proximate
cause of plaintiff's damage is the voluntary breach of
contract on the part of the carrier, and resort must be
had to it for compensation for the injurious con-
sequences.

We are also unable to see that defendant committed
a legal wrong in giving notice to the railroad company
of its claims to the sand and gravel.  Indeed, circum-
stances may have existed which made it equitable and
just that it should have done so.  At least it had the
undoubted legal right to protect its property interests
in that manner.

If defendant committed no legal wrong, though his
act resulted in damage to plaintiff, the law affords no
remedy.  It is *damnum, absque injuria.*  The motive of
defendant is immaterial.  *Anderson v. Public Schools,*
122 Mo. 67.

Plaintiff relies altogether on the doctrine announced
in *Lumley v. Gye,* 2 El. & B. 216; *Bowen v. Hall,* Law
R. 6 Q. B. D. 333, and *Walker v. Cronin,* 107 Mass.
555, and cases following them.

The question really decided, in those cases, is stated
in the opinion, in the case last cited, as follows:  "It

is a familiar and well established doctrine of the law upon the relation of master and servant, that one who entices away a servant, or induces him to leave his master, may be held liable in damages therefor, provided there exists a valid contract for continued service known to defendant."

In *Lumley v. Gye, supra,* the majority of the court held that the relation of master and servant existed between the parties to the contract, and defendant was answerable in damages for inducing one of the parties to break her contract. But COLERIDGE, J. (afterward Lord Chief Justice) dissented, holding that the relation of master and servant did not exist within the meaning of the statute of laborers (23 Edw. 3) in which he said the law had its origin. After an able argument he reached this conclusion: "Merely to induce or procure a free contracting party to break his covenant, whether done maliciously or not, to the damage of another, for the reasons I have stated, is not actionable."

Judge COOLEY states the same rule. He says: "An action can not, in general, be maintained for inducing a third person to break his contract with the plaintiff; the consequence, after all, being only a broken contract, for which the party to the contract may have his remedy by suing upon it." Cooley on Torts, *497; *Chambers v. Baldwin,* 91 Ky. 121; *Bourlier v. Macauley,* 91 Ky. 135; *Boyson v. Thorn,* 98 Cal. 578; *McCann v. Wolff,* 28 Mo. App. 447.

An inquiry whether public policy requires a different rule to govern contracts between master and servant, in respect to personal services to be rendered, is not in this case, for it can not be said that the contract in question created the relation of master and servant between plaintiff and the railroad company. To hold that a carrier is the servant or employe of the shipper

would revolutionize the whole law relating to the duties, obligations and liabilities of common carriers.

The judgment is affirmed. All the judges of this division concur.