SWEENEY v. SMITH et al.

(Circuit Court, E. D. Pennsylvania. February 5, 1909.)

No. 173.

TORTS (§ 12*) — INTERFERENCE WITH CONTRACTUAL RELATIONS — GROUNDS OF LIABILITY.

The mere fact that a purchaser of bonds from a committee of bondholders authorized to sell the same at the time of the purchase had knowledge that the committee had previously contracted to sell them to another does not render him liable to such other in damages because of the sellers' breach of contract.

[Ed. Note.—For other cases, see Torts, Cent. Dig. § 13; Dec. Dig. § 12.*]

In Equity. On demurrers to bill.

George Demming and Wm. L. Royall, for complainant.
Reynolds D. Brown, for J. W. Van Dyke and F. D. Zell.
Henry C. Boyer and Wm. A. Glasgow, Jr., for E. B. Smith and others.

J. B. McPHERSON, District Judge. The defendants in this action may be arranged in two groups, one composed of the partners in the firm of Edward B. Smith & Co., and the other composed of John W. Van Dyke and Frank D. Zell. The bill does not pray for the same, or even similar, relief against each group, but asks for different, and, indeed, for only distantly related, decrees, as will be seen in a few moments. It is not altogether easy to summarize the charges of the bill, for the complainant has chosen the unusual and undesirable course of including much of his evidence and not a few argumentative statements, with the result of presenting for examination a document of more than a hundred printed pages. After attentive consideration, however, it is possible, I think, to condense his cause of action against Edward B. Smith & Co., at least into a comparatively small compass:

In the fall of 1905, the Bay Shore Terminal Company, a Virginia corporation operating a street railway in and near the city of Norfolk, passed into the hands of receivers. A majority of the bondholders, uniting for their own protection, agreed to put their interests into the hands of a committee, to whom was given plenary power to act. On September 12th this committee entered into a contract with the complainant by which he was to acquire a large part of the company's bonds and stock, and was to pay therefor 40 per cent. of the par value of the bonds. Other covenants were contained in the contract; among them, an agreement that a certain cloud on the title to the company's right of way should be cleared off and adjusted. On November 11th this agreement concerning the title to the right of way was modified, but the change is not material in the present dispute. It is only essential to notice that the complainant was to obtain a controlling interest in the company's stock and bonds. No limit of time was fixed within which the respective engagements of the parties were to be fulfilled. For reasons not now important to consider, the contract of September 12th was not carried out. On

January 25, 1906, the same committee made a second contract with D. L. Groner and Tazewell Taylor, who were acting as agents for E. B. Smith & Co. This agreement covered substantially the same ground as the contract of September 12th with the complainant, and practically transferred to Smith & Co. the option upon the bonds and stock that had previously been given to the complainant. There are differences between the two contracts, but none, I think, that calls for attention in the present aspect of the controversy. The agreement of January 25th was carried out in essential particulars. The bonds were delivered to Smith & Co., and were used by them at par and interest in paying the purchase price of the terminal company's property, which they bought at foreclosure sale in the following May. The complainant now prays that Smith & Co. account to him for the profit made by this use of the bonds, proceeding upon the theory that Smith & Co. in effect have in their hands this profit, or its equivalent, which they refuse to give up, although in equity it belongs to the complainant. The only ground set forth in the bill to support this theory is the following sentence from paragraph 12:

"The said Edward B. Smith & Co. knew before they entered upon their negotiations of your orator's contract, as is shown by their answer to a certain petition filed by B. W. Leigh and M. C. Ferrebee, to be more particularly referred to hereafter, and their negotiation with said committee was conducted through one D. L. Groner and one Tazewell Taylor, both of whom knew of your orator's said contract before they entered upon the said negotiations."

The answer referred to in this quotation is not included among the numerous exhibits, but I shall assume that its contents justify the complainant's averment, and that Smith & Co., being chargeable either with their own knowledge or with the knowledge of their agents, Groner and Taylor, were aware of the complainant's contract before they made their own agreement of January 25th. There is no other relevant averment in the bill on this subject. No charge of deceit or false representation or fraud in any form or degree is made against Smith & Co. The bill does not even state that they used any means whatever, fair or unfair, to induce the committee to break the contract of September 12th with the complainant, and there is no averment that they entered into the agreement of January 25th with the intention of injuring the complainant, whether such intention was deliberately malicious or fraudulent, or was only such intention as would be inferred by the law from the fact that injury actually followed. In other words, while it may be supposed that the complainant meant to charge that Smith & Co. interfered with the carrying out of his contract of September 12th, and persuaded or induced the committee to break that contract, no such charge appears in the bill. The only complaint is that Smith & Co. had prior knowledge of the complainant's contract when they began the negotiations that resulted in the agreement of January 25th.

Under all the authorities the bill is fatally defective on this point. The complainant's cause of action does not rest upon contract, for he had no such relation with Smith & Co. It must be founded on a tort, on a wrong done by Smith & Co., and must be supported by

the proposition that it is an actionable wrong to make a second contract with a promisor if he is known to have had a prior contract upon the same subject with another promisee. In my opinion, this proposition is not sound. The promisor may have excellent reasons for declining to be bound by the earlier contract, and these he need not disclose. If he chooses to take the risk of breaking the first agreement, that is his own affair, which may make him liable on that agreement, but imposes no obligation on the second promisee. It is enough for the second promisee that the agreement is now offered to him without his own procurement or persuasion. If he has done nothing to bring the situation about, the mere fact that he knew of the first contract is no bar to his entering upon the second. Mere knowledge of the first does not make the second an actionable wrong; he is under no legal obligation to insist upon being told why the promisor declines to carry out the first contract, and is not bound to weigh these reasons and decide at his peril whether they are good or bad. Before he can be called to account, some legal ground of liability must appear; he must participate in the breach before he can be held to blame; and the mere knowledge that the promisor intends to break the contract with the first promisee is not wrongful in itself, and does not disable the second promisee from making the subsequent contract. To be blameworthy, he must take some active step to bring about the breach. At the least, he must induce or persuade the promisor to abandon the earlier agreement, and even this he may sometimes do with impunity, unless the decisions in several jurisdictions are to be regarded as erroneous. Take the case of two trade competitors: One makes a contract with a customer; the other, knowing that the contract has been made, persuades the customer by fair and legitimate arguments that his wares are better than his rival's, and thus induces the customer to cancel the contract. In such a situation, I am not aware of any decision that would support a suit against the second merchant, although he has unquestionably interfered actively to supplant his rival. But if the pending bill states a cause of action against Smith & Co., as soon as the second merchant knew of the contract with the customer he could not present the merits of his own goods except at the risk of being sued for interference if his presentation should be successful.

It is no doubt true, as already intimated, that the courts have differed in opinion concerning the scope of the rule that should be applied in determining when it is an actionable wrong for a third person to interfere with a contract between two other parties. Many of the cases are collected and discussed in a note to Boysen v. Thorn, 98 Cal. 578, 33 Pac. 492, 21 L. R. A. 233, to which I refer as a comparatively recent summary. See, also, Glencoe Land Co. v. Hudson Bros., 138 Mo. 439, 40 S. W. 93, 36 L. R. A. 804, 60 Am. St. Rep. 560. Without deciding now between the conflicting views, it is enough to say that no case can be found, I think, in which the action has been sustained unless the interference has been wrongful in a legal sense. At the least, the interferer must have induced or persuaded the breach complained of. If he accomplish his purpose by fraud in any of its forms (as was the case in Angle v. Railroad, 151 U. S.

1, 14 Sup. Ct. 240, 38 L. Ed. 55), his liability is undoubted; but I have been referred to no decision, and I have found none, in which mere knowledge of the earlier contract was held to be the equivalent of inducement or persuasion or (still less) of fraudulent conduct. The general subject of interference is further pursued in the first part of the note to Passaic Print Works v. Ely, etc., Co., 105 Fed. 163, 44 C. C. A. 426, 62 L. R. A. 673; and what is probably the latest discussion of interference with the contract between master and servant will be found in the note to Thacker Coal Co. v. Burke, 59 W. Va. 253, 53 S. E. 161, 5 L. R. A. (N. S.) 1091. The subject is also considered in chapter 61 of the third volume of Page on Contracts, § 1323, a treatise published in 1905. In none of these elaborate considerations of the subject will there be found the slightest intimation that mere knowledge by a third person of a prior contract exposes him to suit if he shall in effect agree to take the place of the first promisee. In my opinion, therefore, the bill under consideration fails to set forth a cause of action against Edward B. Smith & Co.

It will also be observed, in the examination of the cases referred to, that, where an actionable wrong has been suffered by unlawful interference with a contract, the form of action to redress the injury is a suit at law. The proceeding here is in equity, and, while it is not necessary (if I am right in what I have heretofore said) to decide that the complainant has an adequate remedy at law, it may not be improper to add that this ground of demurrer by Smith & Co. would deserve serious consideration if it required decision.

It is also objected, both by Smith & Co. and by Van Dyke and Zell, that the bill is multifarious. The complainant attempts to support the proceeding in equity against Smith & Co. mainly upon the, grounds that he cannot sue them at law until he regains the legal title to his contract of September 12th, which is now vested in the other defendants, Zell and Van Dyke, and that the object of the bill is twofold: First, to compel Van Dyke and Zell to reassign the contract, for the reason that the transfer to them (so it is averred) was brought about by false promises or representations; and, second, after the legal title has thus been regained, to compel Smith & Co. to account: No doubt the bill is framed with this double aspect, but as nothing whatever is stated therein to connect Smith & Co. with the transactions that resulted in the assignment to Zell and Van Dyke, it becomes increasingly difficult to see how the complainant can avoid the charge that his bill is multifarious. The two groups of defendants are not averred to have been acting in concert. Smith & Co. have no interest in the litigation to compel Zell and Van Dyke to reassign; Zell and Van Dyke have no interest in the litigation to compel Smith & Co. to account; and apparently the principal reason for joining the two groups is simply because it would be convenient for the complainant to dispose of both controversies in one proceeding. Upon his own concession, however, he has no right to ask Smith & Co. to account until his assignment to Zell and Van Dyke has been adjudged to be invalid; and, as the two subjects—reassignment by one group, and subsequent account by the other—are dis-

tinct and only distantly related, the objection of multifariousness would perhaps be entitled to a good deal of weight, if the court were compelled to determine it. But, in the view that I take of the matter, this objection does not need further attention. If I am right in the conclusion that the complainant has no cause of action against Smith & Co., the bill should be dismissed so far as they are concerned, thus leaving Zell and Van Dyke the sole defendants, against whom the relief prayed, namely, that they may be compelled to reassign the contract of September 12th to the complainant, is a single subject, and may properly be considered by a court of equity. The charges made in the bill to support this prayer need not be set out in detail or summarized. Upon demurrer I am bound to regard them as true, and (while I admit the strength of the argument that has been made in favor of deciding the case now against the complainant on the ground that the parol testimony on which he must rely is inadmissible to contradict the writings that are set out in the bill) at present I shall only say that I do not see my way to sustaining the demurrer of Zell and Van Dyke. Questions may perhaps arise—I do not say that they must arise—concerning the effect of certain conduct of the parties after the execution of the last writing; and, if these questions are to influence the final decision, it is necessary that the court should be fully informed about them. The situation presented in the bill is too complicated, I think, to admit of a satisfactory ruling upon this point without further light.

The demurrer of Smith & Co. is therefore sustained, and the bill is dismissed so far as they are concerned. The demurrer of Zell and Van Dyke is overruled, and they are directed to answer within 30 days so much of the bill as is relevant to the relief prayed for against them.