## SUPERIOR COURT

Crescent Braid Co. of R. I. \
         vs.       Eq.No.6726 \
William P. Burnet, et al. \
       RESCRIPT.

BAKER, J. Final hearing on bill, cross-bill, answer and proof. In this proceeding the complainant is asking for an injunction against the respondent, The L. & R. Company, from interfering with certain contractual rights existing between the complainant and William B. Burnet and Thomas K. Cooper, partners, doing business under the name of the Burnet Company, and also for relief against the respondents William P. Burnet and Thomas K. Cooper to enjoin them from breach of a contract. The bill also prays for an accounting.

The respondent Thomas K. Cooper is not before the court by reason of lack of service.

The frame of the complainant's bill is clearly that of an interference with a contractual right. It is not based on, nor does the testimony support any claim of unfair competition or interference with any property rights or trade mark rights of the complainant company.

In brief the facts show that the complainant entered into a written contract, dated December 18, 1922, with the respondent Burnet and Cooper, a partnership doing business as the Burnet Company, whereby they were to sell certain shoe laces manufactured by the complainant under the brand "Town Talk," which was the property of the respondents Burnet and Cooper. Under the agreement, which was to run for five years, the Burnet Company should not sell any other laces except those manufactured by the complainant, and they agreed they would not represent directly or indirectly any other line of shoe laces and would not permit any other factory to sell shoe laces under the brand or label. For this the respondents Burnet and Cooper were to receive a certain commission.

The testimony shows that for a short time prior to the execution of this agreement the respondents Burnet and Cooper had done some business with the respondent The L. & R. Company, which also manufactured shoe laces. The evidence discloses that the parties operated under the contract in question until about March 17, 1924, when the respondent Burnet entered into an agreement with the L. & R. Company, regarding the sale of shoe laces, and at about the same tme the respondent the Burnet Company, by a bill of sale and by assignment for a consideration, conveyed certain personal property and rights, including all rights in the name "Town Talk," to the respondent The L. & R. Company.

The complainant contends that the agreement entered into between The L. & R. Company and the respondent Burnet is contrary to the terms of the agreement of December 18, 1922, and that The L. R. Company has wilfully and maliciously induced the respondent Burnet to break his contract with the complainant.

As far as the law is concerned it seems to be settled by the weight of authority that in order to enjoin a party from interferring with a contract, the complainant must not only prove knowledge of the existing contract on the part of the interferer but

also a wilful and malicious and deliberate intent to induce and persuade the party to break the contract. There must be something of fraud or force or intimidation in some form.

Sweeney vs. Smith, 167 Fed. 385.

Campbell vs. Gates, 336 N. Y. 457.

McGurk vs. Cronenwett, 199 Mass. 457.

In the judgment of the Court the testimony in this case does not show this suficiently clearly to warrant the granting of the relief prayed for against The L. & R. Company. Most of the cases cited by the complainant in this regard are cases dealing with unfair competition or with interference with property rights of some kind.

In this action the facts as revealed by the testimony of the witnesses and the correspondence of the parties, of which there was considerable, show that Mr. Burnet during the year 1923 was not satisfied with the arrangement with the complainant company. Mr. Levy of The L. & R. Company had some talk with Mr. Burnet in St. Louis in the spring of 1923, and during the summer of 1923 there was frequent correspondence between Mr. Burnet and the office of The L. & R. Company in regard to Mr. Burnet acting as salesman for some of the goods put out by The L. & R. Company.

It is clear from the testimony that The L. & R. Company knew at this time that Mr. Burnet was selling goods for the complainant company, but there is nothing in the testimony or in the letters to show that The L. & R. Company had any knowledge of the terms of the contract under which Mr. Burnet was operating or, in fact, whether he was under a definite contract at all. There is also nothing in the correspondence or in the evidence to show that The L. & R. Company attempted in any way to induce Mr. Burnet to break his contract. The testimony further shows that in November of 1923 Mr. Levy of The L.

& R. Company and Mr. Burnet had a conference in Pittsburgh, and Mr. Burnet finally wrote that all business matters between The L. & R. Company and himself were off because he had made other arrangements. The L. & R. Company heard nothing more about the matter until it received a telegram in February, 1924, from Mr. Burnet, in which he stated that he was free to go with The L. & R. Company. Following this there was a conference between Mr. Levy and Mr. Burnet in Kansas City, and, later, Mr. Burnet came to Providence and a contract was entered into in March, 1924, between Mr. Burnet and The L. & R. Company after the attorneys representing the parties had made certain investigations.

The complainant claims that a fair reading of the testimony shows that The L. & R. Company was attempting to get Mr. Burnet away from the complainant company. It calls attention especially to the testimony of Mr. Benoit and Mr. Gittleman. It seems to the Court, however, that the testimony of these two witnesses does not go to the extent of proving that The L. & R. Company was wilfully attempting to induce, by fraud or other means, Mr. Burnet to break his contract with the Crescent Braid Company. In fact, the Court is of the opinion that a fair reading of the testimony of the witnesses and the correspondence in the case shows that the advances in regard to employment came from Mr. Burnet rather than from The L. & R. Company in the final instance, and that what was done by The L. & R. Company was only in the line of ordinary competition.

In view of this the Court is of the opinion that the complainant is not entitled to the relief prayed for against The L. & R. Company.

A more dificult question is raised in regard to the matter of relief against the respondent Burnet. In this con-

nection the complainant claims that it will suffer irreparable loss if the negative covenants of this agreement of December 18, 1922, are enforced, and if the respondent Burnet is not enjoined from proceeding with the breach of that contract.

In answer to this the respondents claim that the enforcing of these negative covenants would practically lead to a specific performance of a contract for personal services, which of course is contrary to law. The complainant in this regard relies largely on the cases of Lumley vs. Gye, 2 El. & Bl. 216 and Lumley vs. Wagner, 1 D. M. & G. 604.

The respondents also contend that the complainant is not entitled to relief against the respondent Burnet because the complainant itself has breached, modified or substituted another agreement for the contract of December 18, 1922, which is the basis of this suit.

The complainant denies this.

An examination of the testimony and of the correspondence shows that the relations between the Burnet Company and the complainant company during the year 1923 were not always amicable. Mr. Burnet claims that shipments were not made promptly enough by the complainant; that there were delays in forwarding statements and commissions and that the Burnet Company, which was controlling and operating a large number of brokers, was not able to function because of lack of money due to the fact that statements and commissions were not forwarded promptly by the complainant. The latter, on the other hand, claimed that it was living up to its part of the agreement and the difficulty was that Mr. Burnet and his brokers were not selling enough goods.

While, perhaps, the complainant did not strictly carry out its contract in the matter of forwarding statements and commissions on time, neverthe-

less the Burnet Company continued to operate for a considerable period under the agreement after these difficulties, and the Court does not feel that it can say clearly that the complainant company itself breached the agreement of December 18, 1922, in this regard. The testimony does show, however, that toward the latter part of the year 1923, Mr. Burnet, apparently acting largely for himself, came to an understanding with the complainant company whereby, in January, 1924, a new, modified, or substituted arrangement was to go into effect. In substance it was that the complainant company was to pay Mr. Burnet at stated intervals certain money, whether by way of salary or commissions is not very clear, and in return for the payment of certain debts of the Burnet Company by the complainant company all properties of the Burnet Company, including customers' lists, cuts, and the like, would be sent to Providence to the complainant company, and a new corporation was to be organized. Under this arrangement Mr. Cooper, Mr. Burnet's partner, was not considered.

It appears that the cuts, lists and so on were forwarded to the complainant company, but that owing to the fact, apparently, that the debts of the Burnet Company were larger than the complainant company had anticipated, the arrangement of incorporating a new concern and paying off these debts fell through. Also, apparently, Mr. Burnet did not always receive his money under the new arrangement promptly. It was these facts which induced Mr. Burnet to give up his arrangements with the complainant company in February and March, 1918, and make a new agreement with the L. & R. Company.

It is fairly clear from a reading of the testimony and the correspondence that Mr. Burnet was more or less temperamental and perhaps somewhat uncertain in his methods of

doing business. The Court, of course, is not now passing upon the question of what remedy at law the complainant company may have against Mr. Burnet or the Burnet Company for damages for breach of the contract of December, 1922.

The complainant in support of its prayer for an injunction introduced certain testimony tending to show that Mr. Burnet was an exceptional salesman. The Court does not feel that the complainant proved this. A consideration of the evidence, in the judgment of the Court, shows that while Mr. Burnet was a man of considerable ability along his line and a good salesman, there was nothing extraordinary or unusual about the nature of the services he performed. In the opinion of the Court this to a certain extent distinguishes the case from such cases as Lumley vs. Gye and Lumley vs. Wagner, supra, where the services performed were of a more or less exceptional nature.

After considering the testimony bearing on the relationship of Mr. Burnet and the complainant company, while the Court can not say clearly that the complainant first broke the contract, nevertheless the contract was on some parts greatly modified and practically a new agreement was substituted for it and this second arrangement thereafter fell through.

The respondents contend that no injunction should be issued against the respondent Burnet because in modifying the agreement of December 18, 1922, the complainant disregarded the rights of Cooper.

It appears to the Court that there is considerable force in this argument because the original contract was with both respondents, Burnet and Cooper. Also in cases of this kind, asking for the restraining of a breach of a contract by injunction, the Court exercises its discretion and is guided largely by the same equitable principles and doctrines which regulate the remedy for specific performance.

Vol. 4, Pomeroy on Equity, 2nd ed. p. 3953.

Schubert vs. Woodward, 167 Fed. 47.

Kirchner vs. Gurlan Ch. Div. 1909, 1ch. 413.

For these reasons, after a consideration of the law, the testimony and the exhibits in the case, the Court is of the opinion that the complainant is not by a fair preponderance of the testimony entitled to an injunction against the respondent. Burnet restraining him from breaching the contract in question.

The respondent, The L. & R. Company, has filed a cross-bill in which it asks for relief by way of injunction against the complainant.

The testimony shows that the name "Town Talk" was the property of a partnership, the Burnet Company. All rights in this name or mark, and certain personal property were conveyed to The L. & R. Company in March, 1924. In the judgment of the Court the claim of The L. & R. Company to this property and to this name is now superior to any claim put forward by the complainant company. Such being the case, in the opinion of the Court the respondent, The L. & R. Company, is entitled to the relief prayed for in its cross-bill against the complainant and Milton C. Sapinsley, who was made a party to the cross-bill.

The prayer of the original bill of the Crescent Braid Company is therefore denied and the bill is dismissed.

The prayer of the cross-bill of The L. & R. Company against the Crescent Braid Company and Milton C. Sapinsley is granted .