**MAY FURNACE COMPANY, Inc.,**
**Plaintiff-Respondent,**

v.

**Clyde CONAWAY, Defendant-Appellant.**

No. 23440.

Kansas City Court of Appeals.

Missouri.

Dec. 4, 1961.

Leo L. McCormick, Downey, Abrams & Sullivan, Kansas City, for appellant.

Davis, Thomson, Van Dyke, Fairchild & Walsh, Thomas J. Daly, Kansas City, for respondent.

CROSS, Judge.

The circuit court entered a judgment permanently enjoining defendant Clyde

Conaway, a former employee of plaintiff furnace company, from threatening or doing acts intended to injure plaintiff's business. Defendant prosecutes this appeal.

The company employed Conaway on May 1, 1960, as a furnace cleaning and service man and discharged him on August 15, 1960. Two days later the company filed its petition, alleging in part the following:

"2. That defendant was employed by plaintiff as a furnace cleaning and serviceman from, on or about May 1, 1960, to August 15, 1960, at which time defendant was discharged by plaintiff.

"3. That defendant has threatened to contact customers and prior customers for whom defendant performed services while in the employ of plaintiff and threatened to advise said customers and prior customers that the work done was not necessary, was not done in a workmanlike manner and, that said customers and prior customers were charged for services and/or parts not supplied.

"4. That defendant has contacted by telephone or in person at least one customer and prior customer of plaintiff advising him that the work done by defendant, as plaintiff's employee and agent, was not necessary, was not done in a workmanlike manner, and said customer and prior customer was charged for services and/or parts not supplied.

"5. That defendant's actions and threatened actions are a breach of defendant's duty as plaintiff's former agent, not to divulge confidential information.

"6. That unless defendant is restrained and prevented from said actions and threatened actions, plaintiff will suffer permanent and irreparable damage to its business, business reputation and standing in the community.

"7. That the precise amount of plaintiff's damages cannot be definitely ascertained.

"8. That defendant is not financially responsible."

The trial court issued forthwith its order upon Conaway restraining him from doing the acts complained of until further hearing. Thereafter, a hearing was had upon Conaway's motion to dissolve the order. The parties appeared and adduced evidence. Conaway testified in part as follows:

"Q. Mr. Conaway, did you make certain threats you were going to contact customers of May Furnace Company that you yourself had had contact with when you were an employee and tell them the work was improperly done and they had been overcharged? A. Well, I contacted the customer at the time I was dismissed from the May Company for the reason they didn't sell the people the product they bought.

"Q. Did you in fact make threats you were going to do so to some ten people? A. Not ten.

"Q. How many? A. Two, I know of.

"Q. Have you a list you called Mr. Posladek and told him you were going to call them, ten a day and ruin his business? A. I told Mr. Posladek on the phone why I—the reason—

"Q. My question is, did you tell him you had a list of ten and you were going to call them? A. I said I know of ten.

"Q. And you told him you were going to call those ten and ruin his business, is that correct? A. Yes.

   \*    \*    \*    \*    \*    \*

"Q. Now actually your whole attitude was because you did not feel you should have been fired? \* \* \* Just answer the question. Is that right or wrong? A. That is right.

"Q. All right. And because you thought you had been unjustly terminated you had as your whole intent to ruin his business, is that correct? A. I was going to let those two people know of their sand-blasted furnaces.

"Q. The contracts actually called for sand-blast— A. They did not. They called for new ones, and they took them down and had them sand-blasted and sold them back to them as new ones, and I was going to tell the Finlaysons and I contacted the Finlaysons.

"Q. How many others did you contact?

* * * * * *

"Q. Now, I want to hand you what has been marked Plaintiff's Exhibit No. 1. Have you ever seen that before? A. No.

"Q. That is the Finlayson contract, is it not? That is the kind of contract you used for the Finlaysons and others, is that correct? A. I was called out to clean that furnace.

"Q. That is the kind of contract, and it says sand-blast, reset and install, does it not? A. It didn't say that. It does now.

* * * * * *

"Q. Now at the time this restraining order was issued it was your intent to hurt the May Furnace Company business? A. At that time, yes."

Evidence on behalf of the company consisted of testimony given by its president. He identified the document about which Conaway was questioned as the contract between the company and the Finlaysons. The contract called for sand-blasting.

The hearing was treated as a trial on the merits. The trial court found that plaintiff was entitled to and should be granted a permanent injunction, and entered the following judgment:

"It is, therefore, Ordered, Adjudged and Decreed that defendant be permanently enjoined and prohibited from threatening or doing acts with the sole intention and design to injure, impair or destroy plaintiff's business or the orderly and peaceful carrying on of such business".

Defendant's first assignment of error is that the petition failed to state a claim upon which injunctive relief could be granted. He relies upon the general rule that injunction will not issue to restrain the publication of libel and slander because the law provides an adequate remedy, as the court stated in Wolf v. Harris, 267 Mo. 405, 184 S.W. 1139, and Ryan v. City of Warrensburg et al., 342 Mo. 761, 117 S.W.2d 303. We recognize our duty to apply that rule whenever necessary, However, it has no application here because this case is not bottomed on libel or slander as were the Wolf and Ryan cases.

■ In considering this point, we treat the issues that were tried by consent of the parties "in all respects as if they had been raised in the pleadings". Civil Rule 55.54, V.A.M.R. Defendant testified on cross examination, without objection, that he told the company's president that he was going to call ten customers and ruin his business. Conaway further testified that it was his intent to hurt the company. No motive or purpose on the part of Conaway other than the intention to "ruin" or "hurt" the defendant is shown by the evidence. A strong inference arises from the evidence that Conaway's intention to ruin and hurt the May Furnace Company was his sole intention and motive. Since the issue of defendant's intention was inquired into without objection, that intention became an issue in the case "in all respects as if (it) had been raised in the pleadings". In Payne v. White, Mo.App., 288 S.W.2d 6, 10, the court said: "When a fact is not pleaded but the parties offer evidence concerning it and there is no objection and the parties try that issue, it is properly before the court

and can be made the basis of a decree, for the petition will be treated as amended. Section 509.500 RSMo 1949, V.A.M.S. * * *". We therefore treat the petition here as having been amended to allege that defendant committed the acts complained of with the intention to hurt and ruin plaintiff's business.

■ In our opinion, the petition in this case as amended states a cause of action based on a well defined, separate species of tort—a claim "upon which legal and equitable relief may be granted for alleged interference by defendant with plaintiffs' business and contractual relations". Downey v. United Weatherproofing, Inc., 363 Mo. 852, 253 S.W.2d 976, 977. In that case, the Supreme Court said:

> "It has now come to be the view of a majority of courts in this country that one who maliciously or without justifiable cause induces a person to breach his contract with another may be held responsible to the latter for the damages resulting from such breach. * * *

> "The right to perform a contract and to reap the profits therefrom, and the right to performance by the other party, are property rights entitling each party to the fulfillment of the contract by performance. And the intentional interference with the contractual relation without just cause so as to effect a breach of the contract is a wrong for which the wrongdoer may be held accountable in damages. The right of recovery for inducing a breach of a contract is but one instance of the protection which the law affords against unjustified interference in business relations".

Before the Downey case was decided, the Supreme Court in Glencoe Sand & Gravel Co. v. Hudson Brothers Comm. Co., 138 Mo. 439, 40 S.W. 93, 94, 36 L.R.A. 804, followed the minority rule in the historic case of Lumley v. Gye (1853), 2 El. & Bl. 216, 118 Eng.Reprint 749, in which the dissenting opinion stated, that "merely to induce or procure a free contracting party to break his covenant, whether done maliciously or not, to the damage of another * * * is not actionable". The Downey case specifically disapproved the Glencoe opinion and adopted the majority opinion in Lumley v. Gye, which was "that an action will lie for the malicious procurement of the breach of any contract". Expressing its reasons for its reversal of opinion, the Supreme Court said:

> "And our change of view has been brought about by our present belief that rights of the parties to an existing contract are of such importance in the business world that such rights should be protected from intentional and unjustifiable interference by a third person. * * * It has been written that a 'citizen's right to pursue any business, calling, or profession he may choose is a property right to be guarded by equity as zealously as any other form of property. Not every act, of course, which injures another's business will give rise to a cause of action for injunction, irrespective of the availability of legal relief; yet, in a proper case, the remedy will be granted to protect such property right against irreparable injury resulting from the tortious or wrongful acts of others.' 28 Am.Jur., Injunctions, § 124, p. 315."

In the Downey opinion the Supreme Court gives due recognition to the constitutional guarantees of free speech and trial by jury, and the fact that those provisions have been considered barriers to the granting of injunctions as against further defamation, "absent some other ground for equitable relief such as breach of trust, coercion, conspiracy, or a willful, malicious, continuing and irreparable injury to a property right, (citing cases)". Continuing, the Supreme Court stated:

> "But in our case, although the stated false representations are of defamatory character, they are not alleged as such as the basis for injunctive relief.

They are alleged as a means by which defendant was attempting to accomplish another continuing wrong from which plaintiffs seek relief.

"The petition does not purport to state a claim upon defamation. It is alleged that defendant had induced and is continuing in attempting to induce customers to refrain from doing business with plaintiffs and to induce plaintiffs' customers to cancel their contracts by offering to indemnify the customers against liability and by the use of stated false and fraudulent representations, all with the wrongful, unlawful and malicious purpose of preventing plaintiffs' pursuit of their lawful business and of depriving plaintiffs of the benefit of their existing contracts to plaintiffs' irreparable injury. We think it must be conceded that the gist or gravamen of plaintiffs' claim as alleged is for relief against the continuing violation of their property rights—their right to pursue their business and their right to reap the profits from existing contracts.

\*   \*   \*   \*   \*   \*

"We are of the opinion that plaintiffs have stated a claim for the equitable relief of injunction".

We have quoted at length from the Downey case because it is the law that controls in this case and supports our ruling on the sufficiency of plaintiff's petition. The Downey case follows the majority rule and is supported by other general authority not quoted in the opinion including 43 C.J.S. Injunctions § 138; Prosser, The Law of Torts, 2d Ed.1955, pp. 735–736–738–769; Vol. 2, The Law of Torts, Harper & James, 1956, p. 474.

Defendant next complains that it was error to issue the injunction because what he did or threatened to do were lawful acts. With this we cannot agree. Under Conaway's own admissions, he committed and threatened the commission of acts that are in the nature of a tort—therefore wrongful and unlawful. He testified that he threatened to call the company's customers and tell them the work was improperly done that they had been overcharged; that he called the Finlaysons and told them the company had taken their furnace down, sand-blasted it and sold it back as a new one; and, that he had a list of ten customers he intended to call. Conaway admitted that his purpose was to ruin the company's business. He testified that his desire to ruin the company's business arose from his discharge. He also admitted that when the restraining order was issued it was his intention "to hurt the May Company". It is obvious that, in disparaging plaintiff's business practices, Conaway was actuated by resentment, ill will and spite, and that his sole purpose was to injure plaintiff's business.

It is stated in Prosser on Torts, Sec. 106, "In actions for interference with economic relations, the defendant's motive or purpose frequently is the determining factor as to liability—that bad motive is the gist of the action.—Since Lumley v. Gye it has been held that a purely 'malicious' motive in the sense of spite and a desire to do harm to the plaintiff for its own sake, will make the defendant liable· for interference with contractual relations." We can infer that the specific harm intended by Conaway was to induce the breach of customer contracts made with the company, and to cause other persons to refrain from patronizing plaintiff. Such interference with the rights of another cannot be considered as lawful.

Defendant next contends that his right of free speech, guaranteed by the Constitution of the United States, Amend. 1, and by the Constitution of the State of Missouri, art. 1, § 8, V.A.M.S., was abridged by the issuance of the injunction. We believe defendant has waived his right to question the constitutionality of the court's action. The issue comes too late for consideration in this appeal. Defendant was fully apprised by the petition that injunctive relief was sought. His answer, aside from admissions and a disclaimer of knowledge, con-

sisted only of general denial. No affirmative defense whatever was asserted and there was no reference to or invocation of constitutional guaranties. Defendant's only other pleading prior to or during the trial was his motion to dismiss, which contained no supporting ground or reference to any constitutional privilege.

■ The first time defendant asserted the defense of constitutional immunity was in his motion for a new trial. It is fundamental that a constitutional question in order to be available to a party litigant must be raised at the first opportunity present in the case. We decline to consider the assignment. However, it is a matter of interest that in the Downey case the Supreme Court said:

"We are of the opinion that plaintiffs have stated a claim for the equitable relief of injunction. And, while we believe a court should exercise the power to enjoin a spoken or printed word with great caution, we are constrained to the view that, in the instant case, if the allegations of fact as stated in the third count of plaintiffs' petition are established by proof, constitutional provisions insuring free speech and trial by jury may be correctly considered inapplicable. American Malting Co. v. Keitel, 2 Cir., 209 F. 351, Id., D.C., 217 F. 672; Menard v. Houle, 298 Mass. 546, 11 N.E.2d 436; Grand Rapids School Furniture Co. v. Haney School Furniture Co., 92 Mich. 558, 52 N.W. 1009, 16 L.R.A. 721; Nann v. Raimist, 255 N.Y. 307, 174 N.E. 690, 73 A.L.R. 669; cases collated in Annotation, 148 A.L.R., supra, at pages 860–866, and in Annotation, 175 A.L.R. 438 at pages 499–502; 43 C.J.S. Injunctions § 135, pp. 680–681; 28 Am.Jur., supra, Sec. 119, pp. 311–312 and § 124, pp. 315–317; Vol. 4, Pomeroy's Equity of Jurisprudence, 5th Ed., § 1358, pp. 968–969." [363 Mo. 853, 253 S.W.2d 983.]

■ Defendant's final assignment is that the decree of injunction does not conform to the pleading or the evidence. It is stated in 43 C.J.S. Injunctions pp. 932, 933, that it is impossible to lay down any precise rule of universal application as to the degree of certainty required, further than the rule that an injunction should be so clear and certain in its terms that the defendant may readily know what he is restrained from doing, and that he must obey it at his peril. It is our opinion that those purposes are adequately served by the judgment rendered.

It is our separate finding that plaintiff is entitled to a permanent injunction as prayed.

Therefore, the judgment is affirmed.

All concur.