# CHARLES J. MEALEY v. BEMIDJI LUMBER COMPANY.[1]

July 5, 1912.

Nos. 17,706—(249).

**Contract — interference by third person — right of action.**

One who wrongfully interferes or intermeddles with the contract relations between two others, and thereby prevents one of them from carrying out the contract, which results in loss to the other, is liable for such loss.

**Complaint sufficient — question for jury.**

In this case, where it is claimed that defendant wilfully and wrongfully interfered with the performance of a logging contract between plaintiff and another for cutting, hauling, and banking logs sold to defendant by plaintiff, whereby it became impossible for plaintiff to bank all the logs within the time stipulated in the contract of sale, the complaint stated a cause of action, and the evidence made the question of defendant's wrongful interference to plaintiff's damage a question for the jury.

**Rulings of court.**

The rulings of the court on the admission of evidence show no reversible error.

Action in the district court for Hennepin county to recover $5,811.38 damages occasioned through interference with plaintiff's contractor. As a counterclaim the answer alleged that prior to March 31, 1908, plaintiff failed to bank and deliver at Haupt 34,710 feet of white pine logs and 26,781 feet of spruce logs, standing, lying or being upon the premises on November 16, 1907, as he had promised to do, and that defendant thereby sustained damages in the sum of $100. The reply was a general denial. The case was tried before Steele, J., and a jury which returned a verdict in favor of plaintiff for $6,351.98. From an order reducing the verdict to $5,581 and denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*McDonald & Clark,* for appellant.

*Latham, Pidgeon & Larson,* for respondent.

[1] Reported in 136 N. W. 1090.

HOLT, J.

This action was brought to recover damages resulting to plaintiff from the defendant's wrongful interference with plaintiff's contractor. The trial resulted in a verdict for plaintiff, and the court having denied defendant's request for judgment notwithstanding the verdict, and also a new trial on plaintiff's consent to a reduction of the verdict, the defendant appeals.

Plaintiff in 1907 owned one hundred sixty acres of land near Haupt, in this state, upon which was considerable timber fit for saw logs and pulp wood. On August 22, 1907, he made a contract with one Ashcraft to cut, skid, haul, and deck on railroad track or at a mill in Haupt, Minnesota, all merchantable timber on that land on or before April 1, 1908. November 16, 1907, plaintiff by a written contract sold all saw logs standing or lying on that land, namely, 395,000 feet or more, of the following described logs at the prices following, viz.: 125,000 feet white pine, at $13 per M; 150,000 feet spruce, at $12 per M; 40,000 feet tamarack, at $10 per M; 40,000 feet balsam, at $10 per M; and 40,000 feet Balm of Gilead, at $7.50 per M. The size of the logs was specified, also that each log should be bark marked and end stamped. The logs were to be banked at Haupt not later than March 31, 1908, and were to be scaled by the defendant at its expense. The defendant agreed to pay for all logs cut, hauled, scaled, and banked, provided plaintiff delivered all of said logs to defendant with good title, free and clear of liens, and especially was it agreed that no money should be due to plaintiff so long as any lien or other charges remained against the logs. When the last-mentioned contract was signed, the agent of the defendant in the transaction examined the Ashcraft contract, and knew that Ashcraft was then in the performance thereof, and certain minor deviation by Ashcraft from his contract with plaintiff was agreed to be done by him, such as placing bark and end mark on the logs of defendant.

In the latter part of January, 1908, the plaintiff claims that the defendant wrongfully interfered with Ashcraft and his men, so that effective work was interrupted, and that this was repeated later in March, so that by reason thereof plaintiff was unable to deliver all

of the saw logs prior to April 1, which he, but for defendant's wrongful interference, would have done.

At the trial it was conceded that defendant had accepted logs under the contract to the extent of $5,218.54. On this payments in money or merchandise were admitted, so as to leave a balance in plaintiff's favor of $2,330.97. Plaintiff also alleged, and offered evidence at the trial tending to show, that 175,000 feet of logs from the land were banked at the agreed place before December, 1908, which defendant refused to accept, and which plaintiff was compelled to sell at a less price than defendant had agreed to pay therefor, and, further, that it cost plaintiff one dollar more per thousand feet to get the logs out than it would have cost if defendant had not wrongfully interfered with the Ashcraft contract. It is further claimed by plaintiff that 75,000 feet of logs were destroyed by fire, which went over the land in the summer and fall of 1908, after the logs had been cut, and, further, that there were 250,000 feet of logs in standing timber which, under the contract, should and could have been delivered before April 1, 1908, whereby plaintiff sustained a loss because of a depreciation in the value of logs which prevailed all the time after January 1, 1908. Plaintiff also claimed a loss on account of the pulp wood which Ashcraft was prevented from cutting and banking, and, further, for loss of wages or time occasioned by defendant's wrongful conduct; but these two items the trial court took away from the jury, hence no consideration need be given thereto.

The assignment of errors may be considered under these groups:

1. The contention of defendant that the complaint does not state a cause of action, and, if it does, the proof fails to sustain the allegations; hence it was entitled to a directed verdict.

2. The rule of damages was improperly applied on the reception of evidence.

3. Other alleged errors in the admission of evidence.

We take it to be the law that wrongful interference by a third party with an existing contract between two others, causing one to breach it and a resulting loss to the other, is actionable. It is said in Joyce v. Great Northern Ry. Co. 100 Minn. 225, 110 N. W. 975, 8 L.R.A.(N.S.) 756: "The old rule that the remedy in such cases

was an action against the party to the contract who committed the breach, and not against the wrongful intermeddler, is not now the law either in this country or in England." The decisions sustaining this proposition are fully cited in that opinion, and need not be here repeated.

The complaint, after alleging the making of the contracts between plaintiff and defendant and plaintiff and Ashcraft with regard to these logs, stated that Ashcraft was proceeding with the performance of the contract, and had twenty-eight men and sufficient teams to have completed the contract within the time provided. On January 28, 1908, when it was the most favorable time to get the logs out, and when they were being rapidly taken out, defendant came upon the premises and to Ashcraft's camp, and wrongfully and unlawfully persuaded and procured the men to quit the work and leave the camp and break up the same, for the purpose of preventing plaintiff from getting out the logs, and that this, in spite of plaintiff's best efforts, succeeded in breaking up the camp, and caused the loss hereinbefore referred to. We are clear that the complaint states a cause of action.

We are also of the opinion that the evidence tending to prove the alleged wrongful interference was not such that the court was warranted in directing a verdict in defendant's favor. If there was a desire on defendant's part to prevent plaintiff from completing his contract with it, we would hardly expect defendant to announce it to the world. Inferences from surrounding circumstances, motives, conduct, and veiled expressions of the purpose are about all that we generally find where underhanded work is done.

There was testimony tending to show a large fall in the market value of logs soon after this contract was entered into, a desire of defendant to have all the white pine, the most desired timber, banked just prior to January 28, 1908; that on this date the defendant told Ashcraft that he should break up the camp and quit; that it was willing to advance and pay the men working for Ashcraft, on condition that they accept all that was coming to them, and would not tolerate any agreement between Ashcraft and the men that only a part be then paid, and, further that an effort was made to lead the men to understand that any further work might not be paid for;

that defendant insisted on March 23, when the second effort was made to prevent Ashcraft from getting men, that plaintiff make a lower price on the balsam logs than specified in the contract. The effect was shown to be that most of the crew left, and it was impossible to get the logs out as called for by the contract.

There is also testimony that in the absence of such conduct on defendant's part all the plaintiff's timber would have been cut and banked in time.

Further, the evidence tends to prove that defendant did not profess to repudiate the contract, either in January or March, when the men left Ashcraft, but that defendant led plaintiff to believe that it would accept the logs which plaintiff was able to deliver, regardless of time delivered, till in the fall of 1908, when plaintiff had actually banked the 175,000 feet of logs, which defendant then refused to accept. The learned trial court having approved the findings of the jury in plaintiff's favor on the issue of defendant's wrongful interference and the resulting injury, such findings cannot be disturbed here, on the ground that the evidence, as it appears from the printed page, may seem quite persuasive to the contrary.

As to the measure of damages of which defendant complains, we are limited by the assignments of error to one proposition: Was it proper to permit witnesses to testify as to the market value of logs in October and November, 1908? No exception to the charge on the measure of damages was taken, and no error therein was claimed on the motion for a new trial, nor is the court's instruction on that subject assigned as error now. The testimony as to value, received over defendant's objection, is challenged by its thirteenth, fourteenth, and twenty-second assignments of error. The court ruled rightly. There was evidence tending to show that defendant waived strict performance as to time, and led plaintiff to believe that it would accept as many of the logs as he could bank until late in the fall of 1908, when it absolutely refused to receive 175,000 feet of logs he had then banked at Haupt. This is not a case where defendant by its act terminated the contract on March 31, 1908. Its correspondence shows that it professed to be willing to accept logs after that date.

The only other error properly urged to the question of damages is evidence received as to the additional expense plaintiff was put to in cutting, hauling, and banking the logs over what he was to pay under the Ashcraft contract, had not defendant wrongfully interfered with its performance. And we are of the opinion that no error was in that respect committed by the trial court.

Under the situation shown, the Ashcraft contract, known to defendant before it made the agreement with plaintiff, was properly admitted. So were conversations with defendant's treasurer during the progress of the work and while the transactions between plaintiff and defendant were attempted to be adjusted.

Of course, it was necessary for plaintiff to prove that defendant's wrongful acts caused damage, and for that reason the evidence that, but for these, Ashcraft would and could have banked all the logs before April 1, 1908, was admissible; and also was it proper to prove that plaintiff, after the commission of the wrong, used his best efforts to reduce the damage by attempting to get others to complete the contract with defendant.

We see no other assignments of error that require any special mention, and no prejudicial or reversible ruling is perceived.

The order appealed from is in all things affirmed.