MINNESOTA WHEAT GROWERS CO-OPERATIVE MARKET-
ING ASSOCIATION v. A. O. RADKE.
MINNESOTA WHEAT GROWERS CO-OPERATIVE MARKET-
ING ASSOCIATION v. COMMANDER ELEVATOR
COMPANY AND ANOTHER.[1]

June 5, 1925.

Nos. 24,719-24,723.

**Section 27 of Co-operative Marketing Act of 1923 infringes constitutional liberty of contract.**

1. Section 27 of chapter 264 of the Laws of 1923, prohibiting third parties to buy or handle products under contract to co-operative marketing associations, infringes the liberty of contract guaranteed by the state and Federal Constitutions and the remedies for violations of the section fall with it.

[1]Reported in 204 N. W. 314.

**When purchase of staple commodity from owner is not a tort.**

2. To buy from the true owner a staple wholesome commodity which is not under ban as to quality or use, cannot be made a tort simply because the buyer knows such owner has earlier agreed to sell it to another, and where the buyer has held out no questionable inducement to the seller to breach such earlier contract.

1. See Agriculture, 2 C. J. p. 998, § 26a (1926 Anno); Constitutional Law, 12 C. J. p. 949, § 460, p. 950, § 460 (1926 Anno); Statutes, 36 Cyc. p. 975.
2. See Torts, 38 Cyc. p. 508.

1. See note in 25 A. L. R. 1113.

Actions in the district court for Le Sueur county. From an order, Tifft, J., granting temporary injunctions in each case and from his orders sustaining plaintiff's demurrers to parts of the answers, defendants appealed. Reversed.

*Albert C. Remele* and *Moonan & Moonan,* for appellants.

*Arthur Le Sueur,* for respondent.

HOLT, J.

On the same briefs and arguments five appeals were submitted. Two cases were brought by plaintiff. One against A. O. Radke, alleged to operate an independent elevator, for an injunction prohibiting him from purchasing grain from members of plaintiff and for $500 attorney's fees. The other against the Commander Elevator Company and its manager for injunction, liquidated damages, and attorney's fees. The defendants answered separately, and to the parts of the answers challenging the constitutionality of the law plaintiff demurred. In each case a temporary injunction was asked. The demurrers were sustained and the temporary injunctions granted. A separate appeal was taken by each defendant from the order sustaining the demurrers. And in each case there was an appeal from the order granting the temporary injunction.

Plaintiff was incorporated and operates under the Co-operative Marketing Act (L. 1923, p. 333, c. 264). The validity of the entire act is attacked. But, inasmuch as a decision has lately been filed

upholding the law in every particular insofar as it relates to and governs the conduct of those who have become members of such an association, there remain only sections 26 and 27 of the act which are aimed at outsiders who maliciously attempt to induce members' to break their contracts with co-operative marketing associations or spread false reports concerning them, and against those who purchase or aid in purchasing products under contract of delivery to such associations.

Fairly construed the complaints herein are based solely upon section 27 of the act which reads:

"Any dealer or prospective purchaser or any person, firm or corporation conducting a warehouse, elevator or other receiving station within this state who solicits or persuades or permits any member of any association organized hereunder to breach his marketing contract with the association by accepting or receiving such member's products for sale or for auction or for display for sale, contrary to the terms of any marketing agreement of which such person or dealer or prospective purchaser, or any member of the said firm or any active officer or manager of the said corporation has knowledge or notice, shall be liable to the association aggrieved in a civil suit in the penal sum of five hundred ($500.00) dollars for each such offense; and such association shall be entitled to [an] injunction against such dealer or prospective purchaser, or such person, firm or corporation to prevent further breaches of such marketing agreement and to prevent a multiplicity of actions thereon. In addition to other relief said warehouseman or other person, firm or corporation so offending shall pay to the association a reasonable attorney's fee to be fixed by the court and all costs involved in any such litigation or proceedings at law.

"This section is enacted in order to prevent a recurrence or outbreak of violence and to give marketing associations an adequate remedy in the courts against those who encourage violations of co-operative contracts."

The contention is made that the section can be and should be construed as applying to brokers and commission merchants only and

not to purchasers of grain, such as these defendants. We think the contention untenable. The plain intent of section 27 is to reach every one who purchases or aids in disposing of for others than the association products, knowing that the same are offered for sale or disposal by a member who is under contract to deliver such products to the association. The reason which impels us to hold the section invalid when applied to purchasers is just as cogent when sought to be applied to brokers or commission merchants, viz., an arbitrary restraint of the liberty of contract.

Where parties voluntarily become members of an association operating under a statute fixing their rights and duties and providing remedies and penalties for breaches or violations, they may be held to have agreed to all the terms of the statute, and are not in a favorable position to complain of infringement of the liberty of contract or that the damages or penalties prescribed in the statute are too drastic. But no consent can be imputed to nonmembers. No contractual relation exists between them and the association or its members. Of course, it is well settled that a malicious interference by one not a party to a contract to induce its breach is a tort for which redress may be had. Canellos v. Zotalis, 145 Minn. 292, 177 N. W. 133; Bacon v. St. Paul Union Stockyards Co. 161 Minn. 522, 201 N. W. 326. But section 27 does not stop with those who maliciously interfere with existing contracts between third parties. It makes it an actionable wrong for one who has used no effort, or held out no inducement for a member of a co-operative market association to breach his contract with the association, except this, that he is ready at his usual place of business to buy or handle products that such member may voluntarily bring there for sale or disposal, the same as for an outsider. In other words, the section attempts to prevent all dealings between members of a co-operative marketing association and outsiders in respect to products contracted for by the association, no matter how free from legal malice or devoid of inducements the conduct of the outsiders may have been, provided they knew that the product was under contract. The court in Sweeney v. Smith, 167 F. 385, 388 (affirmed in 171 F. 645), 96 C. C. A. 91 said: "I have been referred to no decision, and I have

found none, in which mere knowledge of the earlier contract was held to be the equivalent of inducement or persuasion or (still less) of fraudulent conduct."

On the reargument of Northern Wis. Co-op. T. Pool v. Bekkedal, 182 Wis. 571, 197 N. W. 936, the court modified the injunction so that defendant was permitted to purchase from those members of the plaintiff's association who had voluntarily breached their contract with the plaintiff, thus recognizing the constitutional right of liberty of contract.

As section 27 reads, a purchase from a member who has voluntarily breached his contract with the association is within its condemnation. For, when such member without inducement from an outsider brings to the latter's place of business for sale or disposal a commodity which is under contract for delivery to his association, he has breached his contract with it, and must be held to have so breached it voluntarily. It seems clear to us that it is beyond the power of the legislature to make it a tort to purchase, in the ordinary course of a legitimate business, from the true owner a wholesome staple commodity upon which there is no lien and which is not under any ban or regulation because of inherent qualities or use. Liberty of contract is assured by both state and Federal Constitutions. Williams v. Evans, 139 Minn. 32, 165 N. W. 495, 166 N. W. 504, L. R. A. 1918F, 542, and cases therein cited. This liberty of contract, as said in Miller v. Wilson, 236 U. S. 373, 380, 35 Sup. Ct. 342, 59 L. ed. 628, L. R. A. 1915F, 829, "is freedom from arbitrary restraint—not immunity from reasonable regulation to safeguard the public interest—the question is whether the restrictions of the statute has reasonable relation to a proper purpose." The latest utterance on this subject is Chas. Wolff Packing Co. v. Court of Industrial Relations of Kansas, 267 U. S. 552, 45 Sup. Ct. 441, 69 L. ed. 499.

Respondent argues that the marketing of agricultural products is fraught with such public interest as to justify regulation. Conceding that to be so, we are nevertheless convinced that the length to which the section mentioned goes is an arbitrary restraint and not a proper regulation. The last paragraph in the section, intended

perhaps to express the legislative purpose, is evidently borrowed from the experience of other states relative to crops not raised to any important extent in this state. But even so, we can discover no public interests so affected by the ordinary manner of marketing staple agricultural products that every one except associations formed under this law must be forbidden to purchase or handle the same if offered for sale or disposition, in the usual course of trade, by members of co-operative market associations who have not been solicited so to do by the holding out of questionable inducements.

Entertaining the view that section 27 clearly invades the freedom of contract guaranteed both by the state and the Federal Constitution, it cannot stand. And since the right of injunction, the damages and attorney's fees therein provided must necessarily fall with it, there is no necessity to consider whether the remedies are so drastic as, on that account alone, to vitiate the section.

The order in each case must be reversed.