BEN SORENSON v. CHEVROLET MOTOR COMPANY AND ANOTHER.[1]

May 13, 1927.

No. 25,901.

**When causing breach of contract is not legitimate competition.**

1. When a person has knowledge of the contract rights of another his wrongful inducement of a breach thereof is a wilful destruction of the property of another and cannot be justified as legitimate competition.

**When participation in such act by third party is actionable.**

2. The wilful and successful participation therein by a third party, for the purpose of destroying the business and property rights of the person having the contract, is actionable when followed by damage.

Torts, 38 Cyc. p. 485 n. 98; p. 503 n. 11; p. 504 n. 13; p. 507 n. 23, 24; p. 509 n. 29, 36; p. 510 n. 37, 39; p. 511 n. 42.

---

See note in 21 L. R. A. 233; 16 L. R. A. (N. S.) 746; 28 L. R. A. (N. S.) 615; L. R. A. 1915F, 1076; 15 R. C. L. 56; 4 R. C. L. Supp. 978; 5 R. C. L. 827.

[1]Reported in 214 N. W. 754.

Plaintiff appealed from an order of the district court for Steele county, Senn, J., sustaining defendants' separate demurrers to the complaint. Reversed.

*Leach & Leach,* for appellant.

*S. R. Child, Sherman Child, Lewis Child,* and *Sawyer, Gausewitz & Lord,* for respondents.

WILSON, C. J.

Plaintiff appealed from an order sustaining separate demurrers of the defendants on the ground that the complaint does not state a cause of action.

The complaint alleges: A subsisting agency contract between plaintiff and defendant corporation which, in the event of any question arising threatening to interfere with their mutually satisfactory business relationship, could be terminated only by notice of 60 or 10 days depending on whether plaintiff was an exclusive Chevrolet dealer. The business relations between plaintiff and defendant corporation were mutually satisfactory. The contract required the corporation to furnish cars and parts which plaintiff agreed to advertise and sell. Plaintiff purchased special tools and equipment for repairing Chevrolet cars. He advertised extensively and had a valuable business. Defendant Sander was plaintiff's competitor. Defendants conspired and agreed to destroy and take away plaintiff's business. Sander knew of plaintiff's contract with the corporation, and defendants agreed to acquire plaintiff's business for Sander. Pursuant to this plan and the agreement between defendants, the corporation wrongfully repudiated its contract with plaintiff without giving the notice therein required for cancelation. Plaintiff's business was thereby destroyed by the wrongful acts of defendants. This was done with actual malice toward plaintiff and such malice of the two defendants was well known to each and adopted by both of them.

Every act done by a business man in diverting trade from a competitor to himself is an act intentionally done, and when successful is an injury to the competitor because to that extent it lessens his profits. But it is not wrongful. Trade must be free and unrestricted, but the competitor should operate within the zone of fair

dealing. Competition justifies the use of all lawful and fair means to gain the trade that would otherwise go to a competitor in business.

The mere fact that plaintiff suffered a loss does not render defendants' acts unlawful or actionable. That depends upon whether the acts in and of themselves are unlawful. There is no injury in law resulting in damages except that which flows from an unlawful act. Bohn Mfg. Co. v. Hollis, 54 Minn. 223, 55 N. W. 1119, 21 L. R. A. 337, 40 Am. St. 319.

Ertz v. Produce Exch. of Minneapolis, 79 Minn. 140, 31 N. W. 737, 48 L. R. A. 90, 79 Am. St. 433, holds that a person having no legitimate interests to protect may not lawfully ruin the business of another by maliciously inducing his patrons and third persons not to deal with him.

Joyce v. G. N. Ry. Co. 100 Minn. 225, 110 N. W. 975, 8 L. R. A. (N. S.) 756, holds that wrong and malicious interference by a stranger with contract relations existing between others, causing one to commit a breach thereof, amounts to an actionable tort, and that an action against the party to the contract for a breach thereof is not the exclusive remedy but the wrongdoer may be pursued. We previously held that it was equally unlawful to so prevent the making of a contract. Gray v. Building Trades Council, 91 Minn. 171, 97 N. W. 663, 63 L. R. A. 753, 103 Am. St. 477, 1 Ann. Cas. 172. The Joyce case was followed in Mealey v. Bemidji Lbr. Co. 118 Minn. 427, 136 N. W. 1090; Twitchell v. Nelson, 126 Minn. 423, 148 N. W. 451, 601. In the latter case it is held that the wrongful interference with the contract relations of others causing a breach is a tort. It does not use the word "malice" but Faunce v. Searles, 122 Minn. 343, 142 N. W. 816, is cited as authority. The act is termed wrongful and being the wilful violation of a known right is, in law, the equivalent of being done maliciously. In the Faunce case we said if two defendants, by concert of action and with malice, procure a party to breach his contract, they are liable to the injured party as joint tort-feasors.

In Victor Talking Machine Co. v. Lucker, 128 Minn. 171, 150 N. W. 790, we quoted from the Joyce case: "To justify an act of in-

terference of this sort, it must be founded upon some lawful object." The court then also. followed the Ertz case and extended the rule by saying:

"This was a notice by one competitor telling buyers not to do business with another. Such conduct, without more, is not actionable. One man may lawfully seek the business of a competitor and may tell the 'trade' not to buy of his competitor, so long as he indulges in no threat, coercion, misrepresentation, fraud or other harassing methods."

In Boasberg v. Walker, 111 Minn. 445, 127 N. W. 467, we held that in an action based on conspiracy the plaintiff must show that the purpose of the conspiracy was unlawful or, if lawful, that the means adopted for its accomplishment were unlawful. If the result to be obtained be lawful and lawful means be adopted for its accomplishment, it is immaterial what motive prompted those engaged therein.

In Tuttle v. Buck, 107 Minn. 145,.119 N. W. 946, 22 L. R. A. (N. S.) 599, 131 Am. St. 446, 16 Ann. Cas. 807, it was held that where a man starts an opposition place of business, not for the sake of profit to himself, but regardless of loss to himself, and for the sole purpose of driving his competitor out of business, he is guilty of a wanton wrong and actionable tort. In such a case he would be doing an act which cannot be judged separately from the motive which actuated him.

In Roraback v. Motion Picture Mach. Op. Union, 140 Minn. 481, 483, 168 N. W. 766, 169 N. W. 529, 3 A. L. R. 1290, we said:

"No person or combination of persons has the right maliciously to injure or destroy the business of another by acts which serve no legitimate purpose of his own."

A person may use any lawful means to accomplish a lawful purpose, although the means adopted may incidentally cause injury to another, but he may not intentionally injure or destroy the other's business to accomplish an unlawful purpose. Canellos v. Zotalis, 145 Minn. 292, 177 N. W. 133. The absence of conspiracy, malice or

ulterior motive is emphasized in Scott-Stafford Op. H. Co. v. Minneapolis M. Assn. 118 Minn. 410, 136 N. W. 1092. The wrongful interference with the contract relations of others causing a breach is a tort. Bacon v. St. Paul Union Stockyards Co. 161 Minn. 522, 201 N. W. 326; Minnesota W. G. Co-Op. M. Assn. v. Radke, 163 Minn. 403, 204 N. W. 314; Carnes v. St. Paul Union Stockyards Co. 164 Minn. 457, 205 N. W. 630, 206 N. W. 396.

In the Carnes case it is said:

"The term 'malice,' as used in the class of cases mentioned, means nothing more than the intentional doing of a wrongful act without legal justification or excuse, or otherwise stated the wilful violation of a known right. Whether a wrongdoer's motive in interfering is to benefit himself, or to gratify his spite by working mischief to another, is immaterial, malice in the sense of ill-will or spite not being essential. Numerous cases thus defining malice are collected in 15 R. C. L. pp. 56 and 57."

Where a person does an act solely to impose civil liability, which otherwise would not exist, upon another, such conduct is wrong and, being followed by damages, is actionable in tort. Silliman v. Dobner, 165 Minn. 87, 205 N. W. 696.

In Minnesota W. G. Co-Op. M. Assn. v. Radke, 163 Minn. 403, 204 N. W. 314, we held that it was not a tort to buy a staple wholesome commodity simply because the buyer knew the owner was under contract to sell to another—the buyer not having held out any questionable inducement.

Where a party does a wrongful act resulting in damages to another there is liability. The damage alone does not establish liability. If the act is rightful there is no liability. If a person adopts lawful means to accomplish a lawful result the motive is immaterial. It is also immaterial, if while so acting, another is incidentally injured. Liability may rest upon an unlawful use of a legal right.

Defendant Sander had a perfect right to negotiate and make an agency contract with defendant corporation. If he did this for his own welfare and resorted to no wrongful means to accomplish the purpose he has not subjected himself to liability and the situation

is not changed by the fact that, as an incident thereto, plaintiff was damaged. But did he so act?

Likewise, the defendant corporation had a legal right to breach its contract with plaintiff and pay the resulting damages. It also had the legal right to make an agency contract with Sander for the purpose of advancing its own interests. But did it so act?

The allegations of the complaint are in effect that defendants' purpose was solely to destroy plaintiff's business. If such was the case, it was wrongful and, if followed by damages, which are alleged, liability would follow.

If the corporation deliberately breached its contract it subjected itself to a certain definite liability to plaintiff, but that liability rests on a cause of action other than that mentioned in the complaint.

Under his contract with the corporation plaintiff had built up a valuable business. His relations with the company were mutually satisfactory. Sander, a stranger to the contract, wished to put an end to the business relations between plaintiff and the company and induced the company to repudiate the contract. If he had done this for no other purpose than to deprive plaintiff of the benefits of the contract and of his established business, under all the cases Sander would be liable for his wrongful interference in the contract relations between plaintiff and the company. But according to the complaint Sander had another motive. Not only did he wish to deprive plaintiff of his business, but he also desired to appropriate the business to himself. It cannot be said that this desire furnishes an excuse or justification for an act which would otherwise be unlawful. On the contrary, it accentuates the inherent wrongfulness of Sander's conduct. Under these circumstances, it would be contrary to the decided weight of authority to hold that Sander was serving his legitimate interests or that his conduct was free from wrong, or that, since plaintiff has a cause of action against the company for breach of contract, Sander should go scot-free. It seems clear that elementary principles of business ethics demonstrate the unlawfulness of Sander's conduct, and the law ought to insist on as high a standard of business morality as prevails among reputable business men.

The liability . ' the corporation under the allegations of the complaint is equally apparent, for it is alleged that it was a party to the agreement with Sander to deprive plaintiff of his business, and by its acts enabled Sander to appropriate the business.

Many of the early cases involving this question embrace the breach of contracts for personal services between master and servant. The rule was extended, beginning with Lumley v. Gye, 2 El. & Bl. 216, 22 L. J. Q. B. 463. See 2 Harv. L. Rev. 19. It is now recognized that there is no distinction between a defendant wilfully inducing a third person to break any other contract between him and the plaintiff. The right of competition is not the right to destroy contractual rights. Beekman v. Marsters, 195 Mass. 205, 80 N. E. 817, 11 L. R. A. (N. S.) 201, 122 Am. St. 232, 11 Ann. Cas. 332, and note. The contract between the plaintiff and defendant corporation imposed duties and rights. This contract and the benefits therefrom constituted a property right. An intentional interference therewith by one not having an equal or superior right is wrongful and precipitates liability. The intentional procurement of the breach of an existent contract without just cause or excuse makes him who causes the breach liable for resulting damages, and this is so even though he promoted his legitimate interests. When one has knowledge of the contract rights of another his wrongful inducement of a breach thereof is a wilful destruction of the property of another and cannot be justified on the theory that it enhances and advances the business interests of the wrongdoer. Fraud, misrepresentation, intimidation, coercion, obstruction, molestation, or the wilful and intentional procurement of violation of contractual relations are practices which competition does not authorize. R an W Hat Shop v. Sculley, 98 Conn. 1, 118 Atl. 55, 29 A. L. R. 551; Lamb v. S. Cheney & Son, 227 N. Y. 418, 125 N. E. 817; Angle v. C. St. P. M. & O. Ry. Co. 151 U. S. 1, 14 Sup. Ct. 240, 38 L. ed. 55; Bitterman v. L. & N. R. Co. 207 U. S. 205, 28 Sup. Ct. 91, 52 L. ed. 171, 12 Ann. Cas. 693; Dr. Miles Medical Co. v. John D. Park & Sons Co. 220 U. S. 373, 31 Sup. Ct. 376, 55 L. ed. 502; Berry v. Donovan, 188 Mass. 353, 74 N. E. 603, 5 L. R. A. (N. S.) 899, and note, 108 Am. St.

499, 3 Ann. Cas. 738; Wells & Richardson Co. v. Abraham (C. C.) 146 F. 190; Wheeler-Stenzel Co. v. American Window Glass Co. 202 Mass. 471, 89 N. E. 28; Dunshee v. Standard Oil Co. (Iowa) 126 N. W. 342; Johnson v. Aetna Life Ins. Co. 158 Wis. 56, 147 N. W. 32, Ann. Cas. 1916E, 603, and note; 38 Cyc. 508; Raymond v. Yarrington, 96 Tex. 443, 72 S. W. 580, 73 S. W. 800, 62 L. R. A. 962, and note, 97 Am. St. 914; Gore v. Condon, 87 Md. 368, 39 Atl. 1042, 40 L. R. A. 382, 67 Am. St. 352; West Virginia Trans. Co. v. Standard Oil Co. 50 W. Va. 611, 40 S. E. 591, 56 L. R. A. 804, 88 Am. St. 895; 15 R. C. L. 60, § 20; Martens v. Reilly, 109 Wis. 464, 84 N. W. 840; Knickerbocker Ice Co. v. Gardiner Dairy Co. 107 Md. 556, 69 Atl. 405, 16 L. R. A. (N. S.) 746, and note; Macauley Bros. v. Tierney, 19 R. I. 255, 31 Atl. 1, 37 L. R. A. 455, 61 Am. St. 770. In Tubular Rivet & Stud Co. v. Exeter Boot & Shoe Co. (C. C. A.) 159 F. 824, the court said:

"But where there is either a binding contract for employment for a specific time or a valid contract for the sale and delivery of goods, or other valid executory contract, the interference of a third party lays a direct basis for a suit, precisely as with any other direct blow knowingly struck against any property interest which the law protects."

First Nat. Bank of Hastings v. Corp. Sec. Co. 120 Minn. 105, 139 N. W. 296, holds that a complaint challenged by demurrer will be held sufficient if the facts alleged and those fairly inferable from the allegations give rise to a cause of action.

We hold that the complaint states a cause of action.

Reversed.

STONE, J. (dissenting).

It is easy to say that "wrongful interference" with the contract rights of another resulting in his damage is an actionable wrong. That is undoubted law, except in those jurisdictions which have refused to apply the rule of Lumley v. Gye, 2 El. & Bl. 216, 75 E. C. L. 216, 244. The difficulty arises in determining what makes a case of "wrongful interference," and is enhanced by considering malice

an element instead of merely a frequent attendant of the offense. The word in the present connection is "a mere title" and "its use always occasions question and requires definition and explanation. * * * 'When all that is meant by malice is an intention to commit an unlawful act without reference to spite or ill-feeling, it is better to drop the word * * * and so avoid all misunderstanding.'" R an W Hat Shop v. Sculley, 98 Conn. 1, 118 Atl. 55, 29 A. L. R. 551. Anyway, as all concede, positive ill will, while so often present in wrongful acts, cannot of itself make a lawful act unlawful. It is not the motive of a wrongdoer but the fact that, whatever his motive, he is a wrongdoer, that is material. Carnes v. St. Paul Union Stockyards Co. 164 Minn. 457, 205 N. W. 630, 206 N. W. 396.

Is it wrongful for one employer merely to say to a man in the service of another, "When you are ready to quit your present job, I will pay you a substantial increase in wages?" The answer, of course, must be no, and it must remain so even though the offer was made with knowledge of the existing contract, and results in its breach. If that was the intent, is the result different? If so, a mere mental operation of the actor has changed the legal quality of his act. Suppose another case—that of a retail merchant who, having just contracted to purchase a line of goods from one manufacturer, is approached by the salesman of another. If the latter is told of the contract but has a much better line of goods at lower prices and convinces the merchant of that and, quite incidentally, that it would be to his advantage to breach his first contract and buy the goods last offered, has an actionable wrong been committed? Certainly not if the salesman has been talking only with an eye to the future and in the hope of procuring for his own house the next contract. Will the result be changed solely because he hoped that a breach of the present agreement might flow from his honest praise of his own goods?

The salesman has been truthful. He has done nothing more than present the facts concerning his own line. Upon what theory can it be said that he has done anything wrongful—has committed a

tort for which his employer should answer in damages? None, unless one which attaches to rights of contract a sanctity which they do not possess. "Inviolability of contract" is a misleading phrase, for no contract has the quality it assumes. The law has no prohibition of breach of contract and is satisfied if the delinquent answers in damages. Cases are conceivable where the breach may be laudable morally and the inciting advice legally blameless.

The gist of the cause of action is not the violation of contract. It is rather the wrongful invasion of one's personal rights. Rights given by contract as property rights are on no higher plane than personal rights. They are no more immune from wrongful interference than the latter. And after all, the privilege of contracting is considered a property right as is also that to pursue one's vocation without unlawful interference. 3 Words & Phrases (2d Ser.) 1302. So the attempt to distinguish between personal and property rights, for the purpose of determining the essentials of wrongful interference, is futile, at least as to all contracts which are not specifically enforceable. They present peculiar problems which are not now involved. This objection to the distinction attempted for present purposes between personal rights and contract rights is advanced with much hesitation because it appears not only in the opinion of the chief justice but also in Beekman v. Marsters, 195 Mass. 205, 80 N. E. 817, 11 L. R. A. (N. S.) 201, 122 Am. St. 232, 11 Ann. Cas. 332. The statement is there made that, "Where the plaintiff comes into court to get protection from interference with his right of possible contracts,—that is, of his right to pursue his business,—acts of interference are justified when done by a defendant for the purpose of furthering his (the defendant's) interests as a competitor." The inference is that the same acts of interference may not be justified if perchance they result directly in the breach of an existing contract. But how can that be when the right of freedom of contract, as one of personal liberty, stands on as high a plane, is of as much dignity and should be as much the object of the law's protection as a contract right?

The absence from the decision of a definition of "wrongful interference" is probably as it should be, for there is inherent in defini-

tion the danger of excluding a case which progress, unhindered by definition, would include. But we are at least safe in examining the cases for the elements, the minimum requirements, so to speak, of liability. My own hasty and incomplete examination of the authorities suggests very strongly that there is no "wrongful interference" unless there has been the purposeful procuring of a breach of contract by a stranger to it who has no legitimate interest to serve or, having one, uses unlawful means to effect his purpose. Tuttle v. Buck, 107 Minn. 145, 119 N. W. 946, 22 L. R. A. (N. S.) 599, 131 Am. St. 446, 16 Ann. Cas. 807, is a case of wrongful interference with a plaintiff's business. The defendant having no proper interest of his own to serve, the legitimacy of his method did not avoid liability. That case is the first cited by Judge Taylor in Roraback v. Motion Picture Mach. Op. Union, 140 Minn. 481, 168 N. W. 766, 169 N. W. 529, 3 A. L. R. 1290, in support of the proposition that "No person  *  *  *  has the right maliciously to injure or destroy the business of another by acts which serve no legitimate purpose of his own." That essential qualification is being almost if not quite overlooked in the opinion of the majority.

Decision in the Roraback case was placed also upon Ertz v. Produce Exch. of Minneapolis, 79 Minn. 140, 81 N. W. 737, 48 L. R. A. 90, 79 Am. St. 433, and particularly its enunciation of the principle that interference in the nature of a boycott by a defendant "having no legitimate interests to protect" was wrongful. In Bohn Mfg. Co. v. Hollis, 54 Minn. 223, 55 N. W. 1119, 21 L. R. A. 337, 30 Am. St. 319, the acts of defendants were justified because they did have legitimate interests to protect. In Victor Talking Machine Co. v. Lucker, 128 Minn. 171, 150 N. W. 790, the questioned method of competition was held innocent because not accomplished by "threat, coercion, misrepresentation, fraud or other harassing methods." The legitimate interest being present and the means for its protection in and of themselves lawful, the defendant was absolved from liability. The opposite situation was developed in Mealey v. Bemidji Lbr. Co. 118 Minn. 427, 136 N. W. 1090, the performance of plaintiff's logging contract having been prevented by the defendant's success in causing "the men to quit the work and leave the camp

and break up the same." The case had the harassing circumstances, the vexatious intrusion, absent from the Victor Talking Machine Co. case, supra.

In Joyce v. G. N. Ry. Co. 100 Minn. 225, 110 N. W. 975, 8 L. R. A. (N. S.) 756, liability was predicated upon the absence of "excuse or justification." That is but another way of saying that interference is not actionable unless wrongful. It advances our inquiry only to the extent of indicating that interference is not wrongful if excusable or justifiable. How is it better excusable or justifiable in law than by being exerted in the service of a legitimate interest and by lawful means? What other inference is possible from Minnesota W. G. Co-Op. M. Assn. v. Radke, 163 Minn. 403, 204 N. W. 314, where we went so far as to hold unconstitutional a statute prohibiting third parties from buying from the producers goods known by the purchaser to be under contract to others?

Many of the cases involving the efforts of labor unions to serve their members show legitimate interests but the use of improper means. Roraback v. Motion Picture Mach. Op. Union, supra, is such a case. R an W Hat Shop v. Sculley, 98 Conn. 1, 118 Atl. 55, 29 A. L. R. 551, is another. Retaliatory action promised there was coercion of the plainest sort. The court said: "Though the defendants' purpose was commendable, the means * * * cannot be justified." Without that sentence, the next would be misleading and but a partial expression of the controlling thought of the decision. It is this: "The knowingly procuring McLachlan to breach his contracts * * * were wrongful acts of defendants and done intentionally by them, and for the resulting damage they are liable." The next sentence itself a quotation, and the numerous authorities cited, show why the "knowingly procuring" was wrongful. " 'The gist of the action is not the intent to injure, but to interfere *without justification* with plaintiff's contractual rights with knowledge thereof.' " The court having just said that the "purpose was commendable" but that "the means used to carry it through cannot be justified," the decision of course rests on the latter ground. Martell v. White, 185 Mass. 255, 258, 69 N. E. 1085, 64 L. R. A. 260, 102 Am. St. 341, presents another case of coercion, boycott enforced by a fine.

It is equally clear that misrepresentation, fraud, mere vexatious intrusion, or officious and harassing intermeddling may constitute unlawful means of such nature as to create liability. Angle v. C. St. P. M. & O. Ry. Co. 151 U. S. 1, 14 Sup. Ct. 240, 38 L. ed. 55, was a case of the latter type. The liability there arose from "wrongful conduct," its actionable quality accentuated but not made by its malice. Of course, where the rule of Lumley v. Gye has not found favor the use of unlawful means is alone the test. 2 Cooley, Torts, (3d ed.) 593, citing, inter alia, Boysen v. Thorn, 98 Cal. 578, 33 Pac. 492, 21 L. R. A. 233, and Chambers & Marshall v. Baldwin, 91 Ky. 121, 15 S. W. 57, 11 L. R. A. 545, 34 Am. St. 165.

So far as defendant Sander is concerned, the instant complaint appears to me plainly deficient. Sander was himself an automobile dealer having a perfect right to continue in that business and to sell Chevrolet cars if he could get the agency for them. The *one* result charged against him is that he succeeded in securing the agency which plaintiff had enjoyed. Stripped of its characterizations of supposed motive, the complaint charges nothing more. We may assume that Sander was actuated in part by ill will towards plaintiff. That alone does not make lawful means unlawful, and not a single unlawful act is charged against Sander. He wanted the Chevrolet agency; he had a right to want it and to get it, if he could, by lawful means. No others are alleged against him.

So far as defendant Chevrolet Motor Company is concerned, the utmost wrong charged against it is that it terminated without notice the contract which it had a right to terminate on ten days' notice. Subject to that requirement, plaintiff's agency was terminable at will. So, while the Chevrolet company may be liable to the extent that it breached the contract by terminating it without ten days' notice, the fact remains that a third party is not generally liable for inducing the breach of a contract which is terminable at will. So held with respect to a partnership at will, McGuire v. Gerstley, 204 U. S. 489, 27 Sup. Ct. 332, 51 L. ed. 581, 589. The complaint having failed to show a wrongful interference otherwise by either defendant with contract rights, it seems to me that the demurrers were properly sustained, certainly so as to defendant Sander.

But if that construction of the complaint is strict to the point of error, I still urge that, while we are reiterating that liability arises from a wrongful interference with contract rights which results in damage, we should say also that there is no wrongful interference where the defendant has a legitimate interest to protect and uses means which are in and of themselves lawful.

The tests thus suggested by the decisions by no means remove all the difficulty. It remains in each case to determine what is a legitimate interest and what are lawful means for its protection. What is a legitimate interest probably will not present as much difficulty as will arise in passing upon the propriety of the means employed. That problem will have to depend ultimately upon the fundamental principle of all liability for tort, that each must so use his own as not to interfere unduly with the enjoyment of the rights of others. It is altogether a question of what duty a stranger to a contract owes the parties to it. It is correct generalization to say that he at least is obligated to abstain from officious intermeddling calculated to induce a breach. But how far must he abstain from advancing his own interests by proper means? Do one's good faith and truth make an actionable tort solely because they result in another's breach of contract? They certainly may if the theory of this decision is legally correct. For that reason I dissent from it and submit that the demurrer of defendant Sander at least should be sustained.