## WILFRED WOLFSON v. NORTHERN STATES MANAGEMENT COMPANY AND OTHERS.[1]

June 27, 1941.

No. 32,666.

*Louis B. Schwartz,* for appellant.
*Louis Sachs,* for respondents.

[1]Reported in 299 N. W. 676.

GALLAGHER, CHIEF JUSTICE.

This is an action for conspiracy in inducing the wrongful breach of a contract between plaintiff and defendant Northern States Management Company. The jury returned a verdict for defendants. Plaintiff appeals from an order denying his motion for a new trial.

The defendant corporation was formed by I. S. Whitman, father of the defendants B. B. and M. M. Whitman and an uncle of the plaintiff, for the purpose of owning and operating hotel and apartment properties. The elder Whitman caused qualifying shares to be given to plaintiff, who became president and a director of the corporation. The balance of the shares were given to defendants B. B. and M. M. Whitman. Shortly after its formation, I. S. Whitman purchased the Carlsboro Apartments in Minneapolis and placed title in the corporation. The present suit involves a contract between plaintiff and the corporation for management of that property.

The contract in question went into effect May 1, 1936, although it was not executed until December 14, 1936. It recites that the Carlsboro was purchased by the corporation "with a view of remodeling, furnishing and operating the same as an apartment or apartment hotel under the management of said Wolfson," and provides:

"(1) The term for which this contract shall continue shall be a period of ten (10) years from the first day of May, 1936.

"(2) It shall be the duty of the said Wolfson in coöperation with the officers of said corporation to manage, conduct and operate the said premises as an apartment or an apartment hotel and to devote such time and attention, and superintendence as may be reasonably necessary for the successful operation of said business during the whole of said term; but this shall not be construed to mean his exclusive time and attention.

"(3) The profits or net proceeds available from the said operations shall be divided from time to time between the said Corpo-

ration and the said Wolfson on the basis of two-thirds (2/3) of the said profits or net proceeds to the said corporation and one-third (1/3) to the said Wolfson.

"(4) The term 'profits' or 'net proceeds' shall mean the amount remaining after all of the following charges, interests and expenses have been paid:" Then follows a list of the charges to be deducted from the receipts in arriving at the net profits.

The contract further provides for a termination of it by the corporation prior to its expiration in case of a *bona fide* sale of the premises for not less than its reasonable market value; for a distribution of equipment and profits in case of a sale; and for the carrying of an insurance policy on the life of Wolfson at the expense of the corporation during the term of the contract.

Plaintiff took over the management of the Carlsboro on May 1, 1936, and had almost exclusive charge thereof until he was ousted by defendants on December 12, 1938, as they claim, for neglect of duty and failure to perform the terms of the contract. Plaintiff claims that he faithfully performed its terms and that his discharge was the result of a conspiracy between defendants to deprive him of its benefits. The trial court submitted the case to the jury upon the theory that plaintiff's right of recovery depended upon whether defendants acted with justification and in good faith in terminating his contract. We quote from the instructions:

"You are to determine the question, not whether they acted rightfully or not, but whether they acted with justification, whether or not they had good reason to believe that they were doing the right thing. In other words, did they act in good faith toward this plaintiff? If they did, then if you so find that they acted in good faith and that the action which they took was justifiable, then your verdict will be for the defendants.

"On the other hand, if you find and believe that the defendants in discharging the plaintiff acted without justification, or not in good faith, that is, if they did not have good reason to believe that the plaintiff was not managing the apartment building in

question in accordance with the terms of the contract, then your verdict will be for the plaintiff."

Based upon these instructions, the jury found for defendants. That was equivalent to finding that they acted in good faith and with justification in discharging plaintiff. The evidence fully sustains the action of the jury in that respect.

Plaintiff assigns 59 separate errors. They all pertain to rulings on evidence and to instructions to the jury. For convenience, the assignments are consolidated into five groups for the purpose of argument. Our disposition of the case makes unnecessary a discussion of some of the points raised on appeal.

■ Plaintiff requested the court to instruct the jury that the contract here involved was a partnership agreement. Defendants requested an instruction that it was an employment contract. The court refused both requests. Plaintiff assigns as error the court's refusal to give his requested instruction. We see no error in the respect claimed. The question at issue was not whether the contract was one of partnership or one of employment. It was whether, in terminating the agreement, whatever its nature, defendants acted with justification and in good faith. That issue was largely one of fact for the jury, the standard being reasonable conduct under all of the circumstances in the case. Carnes v. St. Paul Union Stockyards Co. 164 Minn. 457, 205 N. W. 630, 206 N. W. 396; Huskie v. Griffin, 75 N. H. 345, 74 A. 595, 27 L.R.A. (N.S.) 966, 139 A. S. R. 718; Berry v. Donovan, 188 Mass. 353, 74 N. E. 603, 5 L.R.A. (N.S.) 899, 108 A. S. R. 499, 3 Ann. Cas. 738. The court properly submitted that issue to the jury, and plaintiff is bound by the adverse verdict.

■ Plaintiff devotes the second point of his argument to the proposition that he had a right of action against both the corporation and the individual defendants for unlawfully causing a breach of his contract with the corporation. It is the settled law of this state that wrongful interference with the contract relations of others causing a breach is a tort; Twitchell v. Nelson, 126 Minn.

423, 148 N. W. 451, 601; Bacon v. St. Paul Union Stockyards Co. 161 Minn. 522, 201 N. W. 326; Minnesota Wheat Growers Co-op. M. Assn. v. Radke, 163 Minn. 403, 204 N. W. 314; Carnes v. St. Paul Union Stockyards Co. 164 Minn. 457, 205 N. W. 630, 206 N. W. 396; and that wrongful and malicious interference by a stranger with contract relations existing between others, causing one to commit a breach thereof, amounts to an actionable tort and that an action against a party to the contract for a breach thereof is not the exclusive remedy but the wrongdoer may be pursued. Joyce v. G. N. Ry. Co. 100 Minn. 225, 110 N. W. 975, 8 L.R.A. (N.S.) 756. This court held in Sorenson v. Chevrolet Motor Co. 171 Minn. 260, 214 N. W. 754, 84 A. L. R. 35, that when a person has knowledge of the contract rights of another and wrongfully induces a breach thereof, such inducement constitutes the destruction of a property right and is actionable.

No action lies, however, for a conspiracy unless it be shown either that the end sought to be accomplished by the conspirators was unlawful or, if lawful, that the means resorted to for its accomplishment were harmful. Boasberg v. Walker, 111 Minn. 445, 127 N. W. 467. The mere fact of a combination or conspiracy is not in itself a sufficient basis of liability. Bohn Mfg. Co. v. Hollis, 54 Minn. 223, 55 N. W. 1119, 21 L. R. A. 337, 40 A. S. R. 319. There is no tort liability unless there is an absence of justification or excuse. Carnes v. St. Paul Union Stockyards Co. 164 Minn. 457, 205 N. W. 630, 206 N. W. 396; Dewey v. Kaplan, 200 Minn. 289, 274 N. W. 161. In the present case the jury found that there was justification for defendants' acts. The evidence amply sustains that finding. Plaintiff was derelict in the performance of the duties imposed by the agreement between the parties. He seemed to give his own interests preference in the distribution of his efforts. He permitted the dissipation of funds of the corporation by an employe and failed "to devote such time and attention and superintendence" as was "reasonably necessary for the successful operation of said business" as was required by the con-

tract. At least the jury so found, and it was justified in such findings. Accordingly, plaintiff was not prejudiced by the court's instructions as to the measure of damages. The instructions were as favorable as he could expect. The action was not one for breach of contract or for an accounting between plaintiff and the corporation, but for conspiracy in wrongfully inducing a breach of contract. If there was justification for defendants' action in ousting him he was not entitled to damages.

We have reviewed the various claims of plaintiff with reference to instructions and rulings on the introduction of evidence, and we find no error that would justify us in setting aside the verdict and granting a new trial. Most of the evidence complained of relates to the question of justification. This constituted the material issue in the case, and the proof offered with respect thereto was properly received. A discussion of the various claims presented by plaintiff would not be helpful.

The order appealed from is affirmed.