## Terrizzi Beverage Co. v. Local Union No. 830 Brewery and Beer Distributor Drivers, Helpers and Platform Men

*Daniel Sherman*, for plaintiff.
*Richard H. Markowitz*, for defendant.

BLANC, J., May 8, 1962.—Plaintiff filed a complaint in equity requesting a preliminary injunction against defendants for harassment and interference with the business relations and contract of plaintiff with C. Schmidt & Sons, Inc. (hereinafter referred to as Schmidt).

Plaintiff alleges it is a beer distributor in West Chester, Pennsylvania, and has an oral contract with C. Schmidt & Sons, Inc., wherein Schmidt agreed to sell to plaintiff beer in such quantities as ordered, said beer to be delivered to plaintiff at the platform of the brewery of Schmidt in Philadelphia. Under the terms of the agreement, the platform employes of Schmidt were to unload the trucks of plaintiff at the brewery of empty cases of beer and to reload them with full cases of beer.

Plaintiff further alleges that beginning on or about March 21, 1961, and continuously thereafter, defendants have unlawfully harassed, coerced, and intimidated plaintiff by purposely, wilfully, and maliciously interfering with and delaying the unloading and loading of beer onto plaintiff's trucks at Schmidt's loading platform, and also interfering with the oral contract between plaintiff and Schmidt.

Plaintiff further alleges that this unlawful interference is continuous in nature and that plaintiff has suffered and will continue to suffer great and irreparable harm. Plaintiff therefore requests the chancellor to grant a preliminary injunction until final hearing.

At the time of the preliminary injunction hearing, defendants' counsel served a copy of preliminary objections on plaintiff.

The court excluded any testimony on the question concerning the preliminary objections and directed all testimony to the preliminary injunction.

An answer to the preliminary objections was filed thereafter. Subsequent thereto, argument and testimony was heard to the preliminary objections.

Defendants, in their preliminary objections, allege that this court has no jurisdiction over the subject matter of this action because exclusive jurisdiction is conferred upon the National Labor Relations Board.

Section 7 of the National Labor Relations Act of July 5, 1935, as amended, 61 Stat. 140, 29 USCA §157, provides as follows:

"Employees shall have the right to self-organization, to form, join, or assist labor organization, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8 (a) (3)."

Section 8(b) (4) (i) (ii) (B) provides as follows:

"(b) It shall be an unfair labor practice for a labor organization or its agents . . . (4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any

person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is . . . (B) forcing or requiring any person to cease using, selling, handling, transporting or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 9 . . ."

In San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959), the Supreme Court of the United States held that the National Labor Relations Board has exclusive jurisdiction where there is a labor dispute. The court stated that in order to determine whether or not there is a labor dispute, the principle to be used is whether the conduct of the union is "arguably within the conduct prohibited by sections 7 and 8 of the National Labor Relations Act, supra." If said conduct does "arguably fall within either of these sections", then the state courts have no jurisdiction and the matter must be submitted to the National Labor Relations Board.

In the present case, the conduct complained of is not such conduct that is described in section 7 or 8 of the act, because there has been no direct demand made upon plaintiff by the union.

We note that section 8 of the act deals with failure and refusal or the concerted refusal to handle goods of a secondary employer. This is not the situation in the present case. There is merely a deliberate "slowdown" of the handling of plaintiff's beer.

Secondly, the complaint is based on a tort action under the State common law. The cause of action is

brought against defendants for malicious interference with plaintiff's oral contract with Schmidt and also for malicious interference with plaintiff's business relations with its customers.

In Wilson & Co., Inc. v. United Packing House Workers of America, 181 F. Supp. 809, the court stated at page 817:

"The National Labor Relations Act, 29 U.S.C.A. §151, et seq., does not exclude a tort action under state common law against a union. United Construction Workers v. Laburnum Const. Corp., 1954, 347 U.S. 656, 74 S. Ct. 833, 98 L. Ed. 1025. An action may be maintained under state common law against a union for breach of contract even though the breach also constitutes an unfair labor practice under the National Labor Relations Act. International Association of Machinists v. Gonzales, 1958, 356 U.S. 617, 78 S. Ct. 923, 2 L. Ed. 2d. 1018. An action may be maintained against a union under state common law to recover damages for malicious interference with a contract of employment even though the wrongful conduct constituted a violation of the National Labor Relations Act. International Union, United Automobile, etc., Workers of America v. Russell, 1958, 356 U.S. 634, 78 S. Ct. 932, 2 L. Ed. 2d 1030. In that case the interference was by force and intimidation. In the case of San Diego Building Trades Council v. Garmon, 1959, 359 U.S. 236, 79 S. Ct. 773, 3 L. Ed. 2d 775, a state court award of damages in favor of an employer and against a union for peaceful picketing which had as its objective the acceptance by the employer of a proposed agreement was set aside. It was stated in the majority opinion (at page 246 of 359 U.S. at page 780 of 79 S. Ct.) that the activity for which damages were awarded was arguably a protected activity under the National Labor Relations Act. In the same opinion it was stated (at page 247 of 359 U.S. at page 781 of 79 S. Ct.) that the cases in

which state court awards of damages against unions had been sustained by the Court were for the consequences of acts which were wrongful under the traditional law of torts. . . ."

The court further stated on page 818:

"It was heretofore noted that the claim of the plaintiff in Count II sounds in tort, the claimed tort being the inducing of a breach of the collective bargaining agreement between the plaintiff and the unions. That interference with contract relations could constitute a tort was first definitely recognized in the well-known case of Lumley v. Gye (1853) 2 El. & Bl. 216, 118 Eng. Rep. 749, 1 Eng. Rul. Cas. 707. The development and various aspects of the rule pronounced in that case are fully and well covered in Prosser, Torts (2d Ed. 1955). The author cites many cases and a large number of law review writings on the subject. The subject has been extensively annotated. See annotation to Sorenson v. Chevrolet Motor Company, 1927, 171 Minn. 260, 214 N.W. 754, 84 A.L.R. 35, and Dukes v. Brotherhood of Painters, etc. 1950, 191 Tenn. 495, 235 S.W. 2d 7, 26 A.L.R. 2d 1223.

"In Restatement, Torts, Section 766 (1939) it is stated:

" 'General Principle.

" 'Except as stated in Section 698, one who without a privilege to do so, induces or otherwise purposely causes a third person not to

" '(a) perform a contract with another, or

" '(b) . . . is liable to the other for the harm caused thereby.' "

There is no labor controversy between Local 830 and Terrizzi, nor has any request been made of Terrizzi by Local 830. Local 830 has merely sought to harass, annoy, hinder and delay the normal operation of Terrizzi's business. The local has not picketed or

struck in any way against Terrizzi. There is no labor matter which is in contest. Local 830 has only sought to tortiously interfere with a private contract between Terrizzi and Schmidt, as a mere matter of annoyance, which is in violation of the law of the Commonwealth of Pennsylvania, to the effect that no third party may interfere or tortiously meddle and hinder the fulfillment of the terms of a contract between two parties.

Interference with contract relations includes not merely the procurement of a breach of contract, but all invasion of contract relations, including any act injuring or destroying persons or property, which retards, makes more difficult, or prevents performance or makes performance of a contract of less value to the promisee. Hence, it may be said that inasmuch as the interest in a contract is a property right, a party thereto has a right of action against persons who are by their conduct substantially interfering with the performance of the contract.

Counsel for defendants argued to this court that "this field has been so preempted that a state court has practically no jurisdiction except over *violence and breaches of the peace* and it is almost exclusively limited to that field." (Italics supplied).

In San Diego Building Trades Council v. Garmon, supra, Mr. Justice Frankfurter indicates this policy in the following language.

"State jurisdiction has prevailed in these situations because the compelling state interest, in the scheme of our federalism, in the maintenance of domestic peace is not overridden in the absence of clearly expressed congressional direction. We recognize that the opinion in United Construction Workers v. Laburnum Corp., 347 U.S. 656, found support in the fact that the state was determined, as is demonstrated by the question to remedy had no federal counterpart. But that decision

which review was restricted, by the 'type of conduct' involved, i.e., 'intimidation and threats of violence'. In the present case there is no such compelling state interest."

In the case at bar, the evidence indicated that tires were slashed, steel filings were placed in the engine oil, etc. These acts fall within the "type of conduct" contemplated by the Supreme Court of the United States in the Garmon case supra. Therefore, this court has jurisdiction in this matter.

Defendant argues that there is no evidence before the court establishing or even indicating any responsibility on behalf of the defendant union for any of the acts complained of.

The record clearly indicates that the platform men at the Schmidt's Brewery are members of Local 830. These individuals handled the loading and unloading of plaintiff's trucks. While plaintiff experienced continuous delays at every beer pickup, other beer distributors' trucks were loaded and unloaded at Schmidt's by the same platform men without delays.

A representative of Schmidt's testified that there was nothing Schmidt could do about the delays, in view of the fact that Local 830 controlled their employes.

In addition thereto, the president of plaintiff company testified concerning various conversations he had with Local 830 representatives wherein he was advised that if he cooperated with the union his trucks would no longer be delayed.

The chancellor is of the opinion that there was sufficient evidence produced at the preliminary hearing to justify the issuance of a preliminary injunction until final hearing.

Accordingly, preliminary objections dismissed with leave to defendants to file an answer to the complaint within 20 days hereof.

Rule absolute: preliminary injunction entered, until final hearing, in favor of plaintiff and against defendants upon security being entered in the amount of $1,000.